Application of STORER COMMUNICA-
TIONS, INC; WJW–TV8
Intervenors-Appellants.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Jackie PRESSER, Harold Friedman
and Anthony Hughes,
Defendants-Appellees.

No. 86–3656.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 2, 1987.

Decided July 31, 1987.

F. Wilson Chockley, Jr. (argued), Michael T. McMenamin, Kenneth A. Zirm, Walter, Haverfield, Buescher & Chockley, Cleveland, Ohio, for intervenors-appellants.

Steven H. Jigger, Bernard A. Smith, Cleveland, Ohio, Sara Criscitelli (argued) U.S. Atty., Appellate Section, Crim. Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Michael L. Climaco, John R. Climaco, Paul S. Lefkowitz (argued), Roger M. Synenberg, Climaco, Climaco, Seminatore, Lefkowitz, & Garofili, Cleveland, Ohio, for Anthony Hughes, Jackie Presser.

Susan Gragel, Robert Rotatori, Cleveland, Ohio, for Harold Friedman.

Before LIVELY, Chief Judge, RYAN, Circuit Judge, and JOINER, District Judge.*

* The Honorable Charles W. Joiner, Senior Judge, United States District Court for the Eastern Dis-

LIVELY, Chief Judge.

This is one of two appeals now before this court arising from preliminary proceedings in the prosecution of Jackie Presser, the president, and two other officials of the Teamsters Union. Neither appeal involves matters directly related to the question of the guilt or innocence of the defendants. The appellants in both cases seek media access to the sealed records of certain pretrial proceedings that were conducted *in camera* by the district court. The companion case, decided this date, is No. 86–3735 in which the National Broadcasting Company, Inc. and WKYC–TV3 are the appellants (the NBC appeal).

## I.

### A.

The indictment, charging the defendants with embezzlement of union funds, was filed in the United States District Court for the Northern District of Ohio on May 16, 1986. The case was assigned by blind draw to District Judge Ann Aldrich. Following the disqualification of Judge Aldrich, which is dealt with in the NBC appeal, the case was returned to the clerk of court and assigned to District Judge John M. Manos on June 4. Judge Manos recused himself on June 17 and the case was reassigned to District Judge George W. White.

After the case was assigned to Judge White, Storer Communications, Inc. and WJW–TV8 (Storer) intervened and filed a motion to unseal all documents related to Judge Manos's recusal. Storer asserted that the government lawyers had gone to Judge Manos on June 16, without notice to defendants' counsel, and had shown documents to Judge Manos which caused him to recuse himself. Storer sought access to all materials upon which Judge Manos based his recusal.

Judge White scheduled an *in camera* hearing for June 26 on the motions of NBC and Storer to unseal various materials, including those related to Judge Manos's re-

trict of Michigan, sitting by designation.

cusal. On June 26 an attorney for the Department of Justice wrote the attorneys for the three defendants, advising them that the government had filed certain materials *in camera* and under seal with Judge White. The letter stated that the "filing" contained the materials which the government had furnished Judge Manos when he was assigned the case. The record shows that the government filed the materials on June 26 at 12:24 p.m. with a covering document styled "Submission of Arguably Producible Materials Under *Giglio v. United States.*" In this court the government has expanded its argument to contend that the documents shown to Judge Manos were "arguably *Giglio-Brady* " materials.

This document, which was addressed to Judge White, stated that the credibility of Allen Friedman would be an issue in the Presser trial and that the government had an obligation to furnish evidence bearing on his credibility. This document urged the court to rule that the materials purportedly related to Allen Friedman's credibility need not be disclosed to the defendants. The document also stated that unless the court ordered it to do so, the government did not intend to furnish the materials involving Friedman to the defendants. Enclosed with the documents that had been shown to Judge Manos was the transcript of a grand jury proceeding held in Cleveland on December 7, 1983 at which Allen Friedman had testified. The covering document stated that this transcript was included "so that the court may judge the relevance or rather lack thereof, of the Allen Friedman assertions" detailed in the other materials. Allen Friedman's grand jury testimony dealt with events that occurred between 1966 and 1973, was not exculpatory with respect to the charges against Presser and his codefendants, and did not mention Judge Manos.

### B.

Confusion reigned at the June 26 hearing before Judge White. In addition to the government's *ex parte* meeting with Judge Manos on June 16, there had been a scheduled conference with Judge Manos on June 17. The government and all defendants were represented by counsel at that conference, at the conclusion of which Judge Manos announced his recusal. At the beginning of Judge White's hearing on June 26, it appeared that the court was not aware that there had been two meetings. What developed was that no court reporter had been present at either meeting with Judge Manos, and there were no record entries with respect to either meeting except for the order returning the case to the clerk for reassignment.

When it became clear that Storer's motion referred only to the materials presented to Judge Manos at the *ex parte* meeting on June 16, Judge White indicated that he did not believe the materials had been filed. In the order denying Storer's motion, Judge White wrote, "This court is not aware of any material relating to any alleged *ex parte* hearing held by Judge Manos and the court's file does not reflect the aforementioned material." In fact, according to the clerk's date-time stamp the government had filed that material at 12:24 p.m. on the date of the hearing. The hearing began at 1:00 p.m. on June 26 and Judge White's denial order was entered the following day. None of the government attorneys advised Judge White that the materials had been filed, and he appears to have based the conclusion that he lacked jurisdiction over Storer's motion on the assumption that the materials sought by Storer had never been placed in the district court's hands.

The confusion continued in this court. Approximately one week before the scheduled hearing on the Storer and NBC appeals, NBC made a motion in this court that its counsel, in preparation for oral argument, be permitted to examine materials in the file that had been sealed by Judge White. The court undertook to examine the sealed materials in order to respond to this motion. The district court had not made separate files with respect to the ancillary motions of NBC and Storer. As a result, all matters relating to their motions were placed in the record of the underlying criminal case, and two volumes of that record were transmitted to the

court of appeals when NBC and Storer appealed the denial of their motions. All of the individually sealed materials appeared to be in volume 2 of the district court record, or in separate sealed cartons. The court left all of these materials under seal. Some of the parties had filed joint appendices and briefs under seal in this court, a practice the court does not permit. The court entered an order denying NBC's motion, but removing the seal from the portions of the district court record not separately sealed by the order of Judge White, and from the briefs. One volume of the joint appendix was left sealed because it contained a copy of a sealed transcript.

During oral argument of the Storer appeal, the court questioned counsel for the government regarding the whereabouts of the materials that had been submitted to Judge Manos on June 16, since they were not among the materials in volume 2 of the district court record or in the separate sealed cartons previously examined by the court. Counsel responded that she had not included the materials "in the sealed appendix," and offered to file them with the court under seal "tomorrow when I get back to Washington." Obviously, the Department of Justice's left hand did not know what its right hand was doing. As previously noted, the materials had been filed in the district court on June 26. They had been placed in a sealed envelope in volume 1 of the district court record and had been transmitted to the court of appeals. The materials were in the records room of the court of appeals at the very time the government lawyer was advising the court that she would send them "tomorrow."

### C.

The events described in Part I–B are not dispositive of this appeal. They are recited at length to illustrate the difficulties that may result from efforts to close court proceedings. Courts should operate in the open, except where closed hearings are essential to guarantee a fair trial or to protect the integrity of the judicial process. In this case, ultimately the entire district court record, including docket sheets, was transmitted to the court of appeals under seal. Sealed materials should be segregated and clearly identified when transmitting a record to the court of appeals. There must also be better communications within the Department of Justice. In the district court, government lawyers permitted Judge White to rule on the assumption that materials which were the subject of Storer's motion were not in the court's records, when they had been filed by the government on the very day of the hearing. On appeal, a government attorney represented to a panel of this court that the same materials were still not in the court's possession, when in fact the materials had been transmitted as part of the district court record.

### II.

On appeal from denial of its motion for access to the "Manos materials," Storer argues that there is a presumption of openness in all judicial proceedings that should apply to recusal matters. It maintains that the public has a legitimate interest in knowing how a given case becomes the responsibility of a particular judge and a need to know if there are facts which disqualify a judge from hearing a case. Storer contends that the government engaged in blatant "judge-shopping" in inducing Judge Manos to recuse himself, and that the claim that its purpose was to obtain a ruling on "arguably *Giglio-Brady*" material is disingenuous.

The defendants assert that if the government did present *Giglio-Brady* materials to Judge Manos, the defendants would be entitled to have copies but the press has no right to discover them.

The government argues that there is no presumption of openness with respect to either recusal or *Giglio-Brady* materials. Traditionally, the government maintains, the courts have not opened proceedings involving recusal or proceedings seeking preliminary rulings on arguably *Giglio-Brady* materials. There is no absolute right for the public or press to have access to all preliminary proceedings in a criminal

prosecution, the government argues, and Storer has not identified factors in this case which trigger a presumption of openness.

## III.

### A.

In *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." In *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the Court applied the *Brady* doctrine to a situation where the prosecution withheld from the jury the fact that it had promised a key witness that he would not be prosecuted for his part in a crime if he testified against his companion. The Court found that this witness's credibility would be an issue, and the jury was entitled to know of the "deal." Therefore, it was a violation of due process to keep the jury in the dark when the defense sought to establish that there had been an agreement. *Id.* at 155, 92 S.Ct. at 766.

In *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court identified three different situations in which *Brady* applies. The Court described these situations and the various effects of a prosecutor's failure to disclose as follows:

1. The undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and the prosecution knew, or should have known, that it was perjured. In these cases, the defendant's conviction will be set aside if there is any reasonable likelihood that the perjured testimony affected the verdict. *Id.* at 103, 96 S.Ct. at 2397.

2. The defense makes a pretrial request for specific evidence, which is withheld, and the evidence is material in the sense that it might have affected the outcome of the trial, with respect to either the guilt or innocence of the accused, or the issue of punishment. If the evidence is material to the single issue of punishment, then due process only requires a new trial on that issue. *Id.* at 104, 96 S.Ct. at 2397.

3. There is exculpatory information in the possession of the prosecution which is unknown to defense counsel, and defense counsel either makes no request or makes a general request for all exculpatory material or all *"Brady* material." If the defense discovers any evidence after trial that fits this third situation, and the omitted evidence creates a reasonable doubt that did not otherwise exist, then a motion for a new trial must be granted on due process grounds. *Id.* at 106–07, 96 S.Ct. at 2399.

### B.

■ The government contends that it submitted the sealed materials to Judge Manos "in an excess of caution," seeking his determination of whether it was required to furnish copies to the defense. Several courts of appeals have approved the practice of prosecutors submitting possible *Brady* materials *in camera* to the trial court in order to obtain a pretrial determination of whether disclosure is required. *E.g., United States v. Tucker,* 773 F.2d 136, 141 (7th Cir.1985) ("the government acted prudently, [in submitting reports of a government informant concerning other misdeeds of a defendant] since if had not submitted the documents for the judge's inspection it might have opened itself up to a later attack for violating the defendants' rights under" the *Brady* doctrine); *United States v. Dupuy,* 760 F.2d 1492, 1501 (9th Cir.1985) (consultation with trial judge is "particularly appropriate" where government has legitimate reasons for preserving confidentiality of materials submitted); *United States v. Holmes,* 722 F.2d 37, 41 (4th Cir.1983) (prosecutor has obligation to submit material to the trial court *in camera* if he has any doubt about whether it might be exculpatory).

Our examination of the materials submitted first to Judge Manos and later to Judge White reveals that they include no evidence of perjury and contain nothing

exculpatory with respect to the charges against Presser or his co-defendants. There is even less basis for considering the materials to be covered by *Giglio*. Allen Friedman had already been convicted for accepting payments from a union as a "ghost" employee, and was awaiting sentencing when he gave a statement to the government. The fact that Friedman's credibility would be an issue at the Presser trial is beside the point. Every witness's credibility is an issue at trial, to a greater or lesser extent, and the jury is the judge of each witness's credibility. *Giglio* comes into play only when the prosecution withholds material information from the jury bearing directly on the credibility of a government witness. *Giglio* does not require, or permit, the prosecution to obtain a pretrial determination by the judge on the general credibility of its witnesses. The government's *Giglio* argument to this court is patently frivolous.

### C.

■ Although our examination of the documents raises serious questions about the true reasons for presenting the sealed materials to Judge Manos, we accept the government's statement that it acted in an "excess of caution." Nevertheless, we do not approve the practice of government counsel in a criminal prosecution approaching the trial judge *ex parte* in any matter related to the pending case. Materials can be submitted to the court *in camera*, but defense counsel and the public should have notice of the *in camera* proceedings and an opportunity to seek and argue for an open hearing. The public has a legitimate interest in criminal proceedings, and this interest is thwarted by *ex parte* proceedings. Motions for closure of criminal proceedings, both before and during the trial, must be posted promptly on the docket sheet, thus giving notice to the public. When such motions are posted, media organizations may move to intervene for the purpose of contesting closure of hearings and the sealing of documents. See *United States v. Criden*, 675 F.2d 550, 555, 559 (3d Cir.1982) (motions for closure of pretrial criminal proceedings must be docketed suf-

ficiently in advance of hearing on or disposition of such motions to afford interested members of the public an opportunity to intervene and present their views). We have previously cited *Criden* with approval, *In re Knoxville News-Sentinal Co.*, 723 F.2d 470, 474 (6th Cir.1983), and now adopt its formulation for providing notice and an opportunity for the public to present claims of First Amendment rights of access to pretrial criminal proceedings. The Second Circuit adopted the *Criden* requirements in *Application of the The Herald Company*, 734 F.2d 93, 102 (2d Cir.1984). After giving defense counsel and media representatives an opportunity to be heard, the court can then proceed to consider the submitted materials *in camera* if that is required. *Ex parte* proceedings, particularly in criminal cases, are contrary to the most basic concepts of American justice and should not be permitted except possibly in most extraordinary cases involving national security. This is not such a case.

■ A district court has no obligation to conduct a general *in camera* search of the prosecutor's files for *Brady* material. *United States v. Holmes*, 722 F.2d at 41. It is the duty of the prosecutor, not the court, to disclose exculpatory material. *United States v. Dupuy*, 760 F.2d at 1504 (Ferguson, J., concurring). However, when a prosecutor presents material to the court for a *Brady* determination, the court has an obligation to examine the material *in camera* and determine whether disclosure to the defense is required. *Id.* at 1503. Accordingly, upon remand, Judge White will examine the materials and make the required *Brady* determination. There is no *Giglio* issue in this case.

■ The district court clearly erred in holding that it had no jurisdiction to rule on Storer's motion. The underlying cases had been assigned to Judge White and, unbeknownst to him, the materials had been filed in the record along with the government's statement that they were arguably required to be provided to the defense. Upon remand, if the district court determines that the materials must be disclosed

to the defense under *Brady* that determination will not dispose of the Storer motion. *Brady* requires disclosure of information to the defense, and does not speak to the question of public or media access.

## IV.

### A.

■ As the Supreme Court has repeatedly emphasized, there is a strong presumption of openness in criminal trials. *E.g., Press-Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (*Press-Enterprise I*); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). In *Press-Enterprise Co. v. Superior Court of California,* — U.S. —, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*Press-Enterprise II*) the Supreme Court held that under the First Amendment there is a qualified right of public access to some preliminary proceedings in a criminal prosecution. Two "complementary considerations" determine the right of access to any particular proceeding: (1) "whether the place and process has historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the *particular process* in question." *Id.* 106 S.Ct. at 2740 (citations omitted). If a particular proceeding passes these two tests "of experience and logic," the right of access which attaches is qualified, not absolute. *Id.* at 2741. If it is claimed that the right of an accused to a fair trial might be undermined by publicity, "the trial court must determine whether the situation is such that the rights of the accused override the qualified First Amendment right of access." *Id.* The Court described this process by quoting language from its earlier opinion in *Press-Enterprise I:*

> "the presumption may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can deter⸍mine whether the closure order was

properly entered." 464 U.S. at 510, 104 S.Ct. at 824.

It is clear that the district court did not consider either the two threshold questions or the ultimate question of access because of its erroneous conclusion that it lacked jurisdiction.

### B.

■ In the NBC appeals we made a distinction between *sua sponte* recusals and situations where one or more parties seek a judge's disqualification. The record in the present case makes it clear that at least one reason for submitting the materials to Judge Manos at the June 16 *ex parte* meeting was to induce him to consider withdrawing. Thus his recusal cannot be considered to have resulted from his own motion. In accordance with our holding in the NBC appeal we conclude that some of the materials are subject to a qualified right of access. This applies to all the submitted materials except the grand jury transcript, which was totally irrelevant either to Judge Manos's recusal or to the late-discovered *Brady* rationale for the June 16 meeting. Grand jury proceedings are not conducted in the open, and transcriptions of those proceedings are subject to a rule of secrecy. Rule 6(e)(2), Fed.R. Crim.P. The nature of a grand jury's work requires that its proceedings remain secret, *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979), except where the stringent requirements of Rule 6(e)(3), Fed. R.Crim.P., are satisfied. The grand jury transcript filed under seal by the government will remain under seal.

The remaining materials submitted to Judge Manos and subsequently to Judge White will be treated in accordance with the standards set forth today in the NBC appeals, and the district court will rule on Storer's application on the basis of specific findings with respect to the defendants' claim that disclosure of the materials will make it impossible for them to obtain a fair trial.

The orders appealed from by Storer are vacated, and the cause is remanded to the district court for further proceedings consistent with this opinion. No costs on appeal.

JOINER, Senior District Judge, concurring.

I join Parts I, II, IIIA, IIIB, and IVA of the court's opinion. I also join Part IIIC, but only to the extent that it holds that the district court erred in concluding that it did not have the jurisdiction to make a *Brady* determination or to rule on Storer's motion. I write separately to note my disagreement with the court's conclusion that there is a qualified right of access to potential *Brady* materials presented for an *in camera* determination by the trial judge, or that there is a possibility that such a determination should be made at an open hearing.

In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), the Supreme Court first established that the prosecution has a constitutional duty to provide favorable evidence to the accused upon request. In *United States v. Agurs*, 427 U.S. 97, 106–107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976), the Court, recognizing the importance of this prosecution duty, held that *Brady* applies even when defense counsel makes no request for such evidence. As recognized in this court's opinion, given the obvious import of *Brady* disclosures, prosecutors often, "in excess of caution," seek the trial judge's determination of whether certain "borderline" evidence is *Brady* material, even though no request has been made by defense counsel. This procedure involves a prosecutor submitting the materials in question *ex parte* to the trial judge for an *in camera Brady* determination. A record is made of the *in camera* proceeding, but the record and the materials are immediately sealed after the determination is complete. This procedure is well established and serves an important purpose of aiding compliance with rules requiring disclosure of certain evidence to the defendant. It should be encouraged.

Given this procedure, I fail to see how this process can be considered "historically open" to the public, and as a result, the first consideration of *Press-Enterprise Co. v. Superior Court of California,* —— U.S. ——, 106 S.Ct. 2735, 2740, 92 L.Ed.2d 1 (1986) (Press-Enterprise II), is not satisfied, and there is no right of access. Moreover, rather than public access playing a significant positive role in the functioning of the *Brady* process, public access will hamper this important procedure. Prosecutors will be less willing to exercise "an excess of caution" in seeking judicial *Brady* determinations if they believe that this material may be made public, and the confidentiality, which would no longer exist if the continuing disclosures to the trial judge were not made, and which is so critical to this process, would be destroyed. As such, the second consideration from *Press-Enterprise II,* is also not satisfied.

I suggest that the district court was in error in determining that it did not have jurisdiction over the *Brady* decision, and that it lacked jurisdiction to rule on the Storer motion. A motion had been filed to disclose material filed under seal; clearly, the district court had jurisdiction and it should have been exercised. But under the law as explained in *Press-Enterprise II*, the Storer motion should be denied on the merits as there is no public right of access to the materials, unless and until they are ordered disclosed to defendants as *Brady* material. In such case, the court should consider the matter in light of the standards enumerated today in the companion case to the instant case, *Application of NBC, Inc. and WKYC–TV3,* No. 86–3735. If the materials are not ordered disclosed to defendants, there is no public right of access. This is true whether or not a district judge determines to recuse himself. The reasons for that recusal need not be stated, and his action should not in any way alter the decision as to whether there is a public right of access to materials given to the judge for a *Brady* determination.

I would reverse the district court's determination that it did not have jurisdiction, and would direct that the *Brady* determination be made, and that judgment be entered in accordance with the standards set forth

here as to whether Storer should have access to that material.

RYAN, Circuit Judge, concurring in part and dissenting in part.

If this were a case holding only that the district court erred in concluding that it was without jurisdiction to consider the request for relief by intervenor Storer Communications, Inc., I would concur and be done with it—but other conclusions seem to have been reached in Chief Judge Lively's lead opinion, and with several of them I do not agree.

The court appears to have concluded that the government's appearance *in camera* before Judge Manos was really for the purpose of inducing him to recuse himself. The government claims its purpose was not that at all, but was to obtain, "in an excess of caution," a ruling on possible *Brady/Giglio* [1] materials.

Storer says that asserted purpose is "disingenuous" and the real reason for submission of the documents to Judge Manos was to induce him to recuse himself—a blatant exercise in "judge shopping."

The Chief Judge concludes that "[t]here is no *Giglio* issue in this case," that "[t]he government's *Giglio* argument to this court is patently frivolous," and that "our examination of the documents raises serious questions about the true reasons for presenting the sealed materials to Judge Manos." While entirely respectful of the Chief Judge's point of view, I do not share those views, or join in those conclusions.

The *record* shows that in approaching Judge Manos, the government sought a hearing to obtain a ruling whether certain materials in its possession had to be turned over to the defendants. That process has become widely known as an *"in camera" Brady* hearing. The government has called it a *Brady/Giglio* determination. I find nothing sinister or disingenuous in that. The fact that Judge Manos, after evaluating the material, chose to recuse himself, does not somehow retroactively convert the proceeding before him into a

recusal motion or constitute "judge shopping."

In *Press-Enterprise Co. v. Superior Court of California*, 478 U.S. ——, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*Press-Enterprise II*) the Supreme Court posited that the first of two "complementary considerations" that test whether the press enjoys a first amendment qualified right of access to judicial proceedings, is whether the "place and process" has historically been open to the public. As Judge Joiner has pointed out in his separate opinion, the "place" at which material is submitted to the court for a *Brady* determination has historically been closed to the press and public because the process has historically been conducted *"in camera."* Thus, it is even more self-evident in this case than it was in the companion case, *United States v. Jackie Presser (Application of National Broadcasting Company)*, that the *Press-Enterprise II* test for determining a qualified first amendment right of access to judicial proceedings is unmet.

In addition, *Press-Enterprise II* is no authority for the conclusion that the general public, including Storer, has a constitutional right of access to the materials submitted to Judge Manos. As I indicate in my dissenting opinion in the companion NBC case, *Press-Enterprise II* has nothing to do with court documents.

Moreover, materials submitted to the trial court for a *Brady* or *Brady/Giglio* determination are potential discovery materials. If a trial court rules that such materials must be disclosed to the defendant, they thereby become discovery materials and the defendant has a right to them—but the public and press do not. The Supreme Court has been very clear that there is no first amendment right of access, qualified or otherwise, to discovery materials. See *Seattle Times v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), in which the Court stated:

"[Discovery is] not [a] public component[ ] of a ... trial.... Much of

---

1. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Giglio v. United States,*

405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

the information that surfaces ... may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."

*Id.* at 33, 104 S.Ct. at 2208.

To be sure, the Chief Judge does not hold that a properly conducted *Brady* determination proceeding is completely open to public access. He appears to agree that it is not, but would require that new procedural steps be taken to alert the press and public when a *Brady* submission is about to be made to a trial court. However, in Part IV of his opinion, my brother appears to treat the material submitted to Judge Manos in this case not as *Brady* material, but as documentation intended to induce Judge Manos to recuse himself. Having thus concluded that the government's submission was really a recusal request, the Chief Judge would order the district court, upon remand, to treat the material "in accordance with the standards set forth today in NBC...."

In my judgment, the proceeding before Judge Manos was not a recusal request and there is nothing other than suspicion, speculation and Storer's argument to suggest it was. It was a *Brady* determination proceeding, just as the record before us shows it was. Storer had no constitutional right to be present at the proceeding or have access to the materials submitted to the court "*in camera.*" With all due respect, I am unable to share my brother's suspicion of the motive of the government attorneys in this case, or the good faith of their representations to this court. Plainly, there was confusion. The government attorneys who responded to the court's questions at oral argument were not the same government attorneys who made the submission to Judge Manos. Had the government attorneys had any reasonable basis whatever to anticipate that a routine *Brady* submission would be challenged by the media as an unconstitutional deprivation of first amendment rights, they might have made a better record and communicated among themselves, and with this court,

more clearly. That they did not has resulted in some confusion, but not, in my judgment, any deception.

Finally, while I subscribe to my brother Joiner's dissent from the idea that either the *"in camera" Brady* determination hearing, or the documents submitted for consideration are subject to a first amendment right of access, I am unable to agree with him that, should the district court upon remand decide that the materials submitted to Judge Manos are discoverable under *Brady* or *Giglio*, the media would enjoy a first amendment right of access to them. The mere fact that an *in camera* determination may result in a ruling that the submitted material is discoverable under *Brady* does not somehow constitute the "place and process" at which the determination was made an historically open proceeding. *See Press-Enterprise II*, 478 U.S. at ——, 106 S.Ct. at 2740, 92 L.Ed.2d at 10.

Today's effort by the media in the companion NBC case and this case to find in the first amendment a constitutional right of access to information it could not turn up on its own—information generated in connection with proceedings never historically open to the public and light years distant from the criminal trial itself—should fail because there is no justification for it in the language of the first amendment or any authoritative interpretation of it. The first amendment guarantees to the press and broadcast media a qualified right to publish information it possesses, not the constitutional right to demand revelation of information it does not.

Plainly, the district court erred in concluding that it had no jurisdiction to entertain Storer's request. We should reverse and remand: but with what instructions?

When a claim to a constitutional right of access to court documents and proceedings is made, and the claim has no merit, as in this case, the district court should, if it closes the proceedings and seals the documents, make specific findings of fact and conclusions of law in order to permit a reviewing court to determine whether the order closing the proceedings and sealing

the documents was a sound exercise of the court's discretion—a discretion to be disturbed only for abuse. Because the district court determined it had no jurisdiction to consider Storer's application in this case, it made no such findings and conclusions.

In candor, I must acknowledge that it was not possible for me to address the issues raised by the parties and addressed by my colleagues, without expressing my understanding that it has long been the nearly universal practice in federal district courts to conduct *Brady* determination hearings *in camera*. That history, and the justification for it, as explained by Judge Joiner, suggests to me that district courts generally do not abuse their discretion in closing *Brady* determination hearings to the general public and the press.

Nevertheless, I would remand the case to the district court for a determination of whether Storer has a common-law right of access to the materials submitted to Judge Manos. It is my understanding that no verbatim transcript of the proceedings was made, thus precluding any question about the right of access to the record of the earlier proceeding.