**UNITED STATES of America**

v.

**Victor GEORGESCU, Defendant.**

**No. 89 CR 258.**

United States District Court, E.D. New York.

Oct. 25, 1989.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. by Peter Norling, Asst. U.S. Atty., Brooklyn, N.Y., for U.S.

Kreindler & Kreindler (Roger Bennet Adler, Paul S. Edelman, of counsel), New York City, for defendant.

WEINSTEIN, District Judge.

Over the mid-Atlantic on a Scandinavian Airlines flight from Copenhagen, Denmark to John F. Kennedy International Airport in Queens, the defendant, a Romanian national, allegedly accosted a nine year old girl who is a national of Norway by placing his hand on her genitals. He was indicted for committing a criminal sexual act while in the special aircraft jurisdiction of the United States. 18 U.S.C. § 2241(c) (Supp. V 1987), 49 U.S.C. App. § 1472(k)(1) (Supp. V 1987). In this case of first impression, he moves to dismiss, claiming lack of jurisdiction in United States courts. His motion must be denied for the reasons stated below.

## I. Statutory Language

■ Section 2241 of chapter 109A of title 18 of the United States Code deals with sexual abuse of a child under the age of twelve, making it a crime punishable by up to life imprisonment. It provides in part:

> Whoever in the special maritime and territorial jurisdiction of the United States ... knowingly engages in a sexual act with another person who has not attained the age of 12 years, or attempts to do so, shall be fined ..., imprisoned for any term of years or life, or both.

18 U.S.C. § 2241(c) (Supp. V 1987).

The special maritime and territorial jurisdiction of the United States is defined in section 7 of title 18. Insofar as relevant, it covers only American owned aircraft, 18 U.S.C. § 7(5) (1982), and offenses "against a national of the United States." 18 U.S.C. § 7(7) (Supp. V 1987). Neither applies here. Title 18 deals with crimes and criminal procedure generally. Many crimes are defined in the substantive titles of the Code.

Subsequent legislation, incorporated in the transportation title of the United States Code, title 49, established a new "special aircraft jurisdiction." Congress authorized the exercise of this jurisdiction over specified crimes, including sexual abuse crimes defined under chapter 109A of title 18. This provision reads:

> Whoever, while aboard an aircraft *within the special aircraft jurisdiction* of the United States, *commits an act which, if committed within the special maritime and territorial jurisdiction of the United States*, as defined in section 7 of Title 18, would be in violation of ... chapter 109A ... of such Title 18 shall be punished as provided therein.

49 U.S.C. App. § 1472(k)(1) (Supp. V 1987) (emphasis added).

The broad definition of "special aircraft jurisdiction of the United States" includes a foreign aircraft scheduled to stop in the United States if it actually lands here. The statute states:

> (38) The term "special aircraft jurisdiction of the United States includes—
>
> . . . .
>
> (d) any other aircraft outside the United States—
>
> (i) that has its next scheduled destination ... in the United States, if that

aircraft next actually lands in the United States ...

....

while that aircraft is in flight, which is from the moment when all external doors are closed following embarkation until the moment when one such door is opened for disembarkation....

49 U.S.C. App. § 1301(38)(d) (Supp. V 1987). This definition covers the aircraft of the foreign airline aboard which the defendant and his alleged victim were traveling; Kennedy Airport was the next scheduled destination and the aircraft actually landed there.

The defense maintains that only those acts committed in the special maritime and territorial jurisdiction as defined in title 18 are punishable under section 1472(k)(1). If commission in the special maritime and territorial jurisdiction were a prerequisite to the offenses specified in section 1472(k)(1) of title 49, then this section would be unnecessary, since the matter would already be covered by section 2241 of title 18, which specifically refers to the special maritime and territorial jurisdiction. The extension of jurisdiction to prosecute sex crimes in the special aircraft jurisdiction would have accomplished nothing.

The phrase "if committed within the special maritime and territorial jurisdiction" in section 1472(k)(1) does not establish an element of the offense. It indicates that the acts made illegal by our laws when committed in the special maritime and territorial jurisdiction are also made illegal if committed in the special aircraft jurisdiction. *Cf. Chumney v. Nixon*, 615 F.2d 389, 391 (6th Cir.1980) (interpreting special aircraft jurisdiction in a civil case; "Congress ... has undertaken to apply federal law to American (and other) aircraft while such aircraft are ... returning from a foreign country directly to an airport in the United States.").

## II. Clarity of the Criminal Statute

■ Defendant argues that the statutes under which he is being prosecuted are at least ambiguous in their coverage of the act alleged, and that ambiguity in criminal statutes should be resolved in favor of the defendant. The statutes at issue here are not sufficiently ambiguous to warrant application of the principle of lenity in favor of the defendant.

The purpose of the lenity principle is first, to provide fair warning of the consequences of proscribed conduct. *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971). As Mr. Justice Holmes pungently put the matter, "Although it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given." *McBoyle v. United States*, 283 U.S. 25, 27, 51 S.Ct. 340, 341, 75 L.Ed. 816 (1931). The second purpose is to insure that legislatures, not courts, define criminal activity. *Bass*, 404 U.S. at 348, 92 S.Ct. at 522. But the rule of lenity "in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense," *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). It does not require that lack of grammatical felicity should frustrate reasonable interpretations of a criminal statute. *See United States v. Evans*, 333 U.S. 483, 487, 68 S.Ct. 634, 636, 92 L.Ed. 823 (1948).

Defendant, had he read the applicable statutes, would have had fair warning that the act allegedly committed is a crime, and that by flying into the United States he was subjecting himself to prosecution in American courts. *See* Mendelsohn, *In-Flight Crime: The International and Domestic Picture Under the Tokyo Convention*, 53 Va.L.Rev. 509, 555 (1967) (acts proscribed by 49 U.S.C.App. § 1472(k) are universally condemned, hence more specific notice is not constitutionally necessary).

## III. Legislative History

The statutory language is clear enough so as to need no buttressing from legislative history. In fact, language and history are in accord. The history of the statutes regarding crimes committed aboard aircraft makes plain the congressional design to criminalize and create jurisdiction over specified acts committed in non-United States airspace aboard foreign carriers

bound for and landing in the United States, including aggravated sexual abuse as defined in section 2241 of title 18.

Congress first established jurisdiction over certain crimes committed aboard "an aircraft in flight in air commerce," including foreign aircraft flying in non-United States airspace, in 1961. Federal Aviation Act Amendments of 1961, Pub.L. No. 87–197, 75 Stat. 466, 466 (1961). *See* Mendelsohn, *In-Flight Crime: The International and Domestic Picture Under the Tokyo Convention,* 53 Va.L.Rev. 509, 534–48 (1967). "Air commerce" was defined as including "overseas and foreign air commerce," Federal Aviation Act of 1958 § 101(4), Pub.L. No. 85–726, 72 Stat. 731, 737, which in turn was defined, in relevant part, as commerce between "a place in the United States and any place outside thereof." *Id.* § 101(20)(c), 72 Stat. at 738.

The legislative history of these criminal provisions illustrates the congressional design to extend jurisdiction to include crimes committed in non-United States airspace aboard foreign aircraft that land in or depart from the United States. The House report accompanying the bill stated:

> The language of this legislation, coupled with the definition of "air commerce" in the Federal Aviation Act of 1958, will operate to make certain of its provisions applicable not only to acts committed on American-flag aircraft in flight in air commerce over foreign countries but also to such acts committed on foreign aircraft in flight in air commerce over foreign countries, but only if such aircraft are engaged in flights originating at or destined to points in the United States.

H.R.Rep. No. 958, 87th Cong., 1st Sess. 4, *reprinted in* 1961 U.S.Code Cong. & Admin. News 2563, 2564.

The crimes made punishable in this expanded jurisdiction included rape, carnal knowledge of a female under 16, and lewd or obscene acts. Pub.L. No. 87–197, 75 Stat. 466, 466 (1961); H.R.Rep. No. 958, 87th Cong., 1st Sess. 13–14, *reprinted in* 1961 U.S.Code Cong. & Admin.News 2563, 2573–74. Defendant's claim that the current version of this statute was intended to

apply only to such crimes when committed in connection with a hijacking is untenable. The House report for this 1961 version stated, "The crimes referred to would be punishable regardless of whether there was any connection between the specific crime and the offense of aircraft piracy." H.R.Rep. No. 958, 87th Cong., 1st Sess. 10–11, *reprinted in* 1961 U.S.Code Cong. & Admin.News 2563, 2571.

In 1969, the Senate consented to the ratification of the multilateral Convention on Offences and Certain other Acts Committed on Board Aircraft, 20 U.S.T. 2941, T.I. A.S. No. 6768, 704 U.N.T.S. 219 [hereinafter Tokyo Convention], *reprinted in* L. Henkin, R. Pugh, O. Shachter & H. Smit, *Basic Documents Supplement to "International Law: Cases and Materials"* 296 (2d ed. 1987) [hereinafter Documents Supplement]. 20 U.S.T. at 2958. The purpose of the Tokyo Convention was in part to encourage countries to punish crimes and certain non-criminal acts committed aboard aircraft. The Tokyo Convention allows parties to exercise jurisdiction over crimes committed aboard foreign aircraft in foreign or international airspace. *See* Part V, *infra* (discussing in detail the provisions of the Tokyo Convention and the purposes of its drafters).

When the Senate consented to ratification, it was aware of the Tokyo Convention's broad jurisdictional provisions. The President's message of transmittal of the Tokyo Convention to the Senate pointed out the concurrent jurisdiction provision. S. Exec. Doc. L, 90th Cong., 2d Sess. 3 & 6 (1968). In its report, the Senate reprinted testimony of the deputy legal advisor to the Department of State, who noted that the Tokyo Convention "would permit the United States to continue to exercise jurisdiction over acts aboard foreign aircraft flying to, in, or from the United States." S. Exec. Rep. No. 3, 91st Cong., 1st Sess. 7 (1969).

In 1970, Congress enacted legislation regarding crimes committed aboard aircraft, in part to implement the Tokyo Convention. The 1970 legislation supplanted the vague notion of "in flight in air commerce" with a

new jurisdictional definition, "special aircraft jurisdiction." The statute defined special aircraft jurisdiction to include

> (c) any other aircraft (i) within the United States or (ii) outside the United States which has its next scheduled destination or last point of departure in the United States provided that in either case it next actually lands in the United States.

Pub.L. No. 91–449, 84 Stat. 921, 921 (1970). The House report stated that (ii) covered "foreign aircraft ... and depends on contacts with this country." In the view of Congress, departing from or arriving to the United States constituted sufficient contacts to warrant exercise of jurisdiction. H. Rep. No. 91–1535, 91st Cong., 2d Sess. 2 (1970), 1970 U.S.Code Cong. & Admin. News 3996. *See* Mendelsohn, *In–Flight Crime: The International and Domestic Picture Under the Tokyo Convention,* 53 Va.L.Rev. 509, 548–58 (1967) (recommending "place of landing" as a basis of jurisdiction). For a discussion of the acceptability of place of landing jurisdiction in international law, see Part V, *infra.*

The Senate reprinted a letter from the Chairman of the Civil Aeronautics Board noting the effect of the new special aircraft jurisdiction:

> In the case of foreign aircraft, the criminal provisions of [49 U.S.C. § 1472] are limited to offenses committed on board such aircraft when they are in the territorial airspace of the United States, or when the aircraft lands in the United States as the result of schedules or as the result of being forced to do so after having last departed therefrom.

S.Rep. No. 91–1083, 91st Cong., 2d Sess. 5, *reprinted in* 1970 U.S.Code Cong. & Admin.News 3996, 3999.

At congressional hearings on the special aircraft jurisdiction statute, several witnesses discussed the desirability of exercising jurisdiction over crimes committed on foreign aircraft. The General Counsel of the Federal Aviation Administration declared that the Tokyo Convention provides for concurrent jurisdiction, and listed the crimes then punishable under 49 U.S.C. App. § 1472; these were the same crimes listed in the Federal Aviation Act Amendments of 1961, and included rape, carnal knowledge, and lewd, indecent or obscene acts. *Convention on Offenses and Certain Other Acts Committed on Board Aircraft: Hearings on S. 2176 Before the Senate Comm. on Commerce,* 91st Cong., 2d Sess. 7–9 (1970).

The legal advisor of the Department of State discussed the deficiencies of the old "air commerce" jurisdictional grant that the new special aircraft jurisdiction was designed to remedy. He stated: "[T]here may be some cases of foreign-flag flights that are not clearly covered by the above definition of 'air commerce' where we would want to assert jurisdiction." *Aircraft Hijacking: Hearings Before the House Comm. on Foreign Affairs,* 91st Cong., 2d Sess. 83 (1970).

At the same time that Congress created the special aircraft jurisdiction, it also amended the criminal penalty provisions of the Federal Aviation Act to reflect this change. *See* Pub.L. No. 91–449, 84 Stat. 921, 921 (1970). The new provision read:

> (k)(1) Whoever, while aboard an aircraft within the special aircraft jurisdiction of the United States, commits an act which, if committed within the special maritime and territorial jurisdiction of the United States, as defined in section 7 of Title 18, would be in violation of section 113, 114, 661, 662, 1111, 1112, 1113, 2031, 2032, or 2111 of such Title 18 shall be punished as provided therein.

49 U.S.C.App. § 1472(k)(1) (1982). The Senate Report stated: "The effect of these amendments is to extend the criminal provisions to all aircraft within the special aircraft jurisdiction." S.Rep. No. 91–1083, 91st Cong., 2d Sess. 1, *reprinted in* 1970 U.S.Code Cong. & Admin.News 3996, 3997.

The special aircraft jurisdiction was amended in 1974 to comply with the Convention for the Suppression of Unlawful Seizure of Aircraft (Hijacking), Dec. 16, 1970, 22 U.S.T. 1641, T.I.A.S. No. 7192, *reprinted in Documents Supplement, supra,* at 303 [hereinafter Hague Convention]. *See* Pub.L. No. 93–366, 88 Stat. 409, 409–10 (1974). The amended definition

added clause (ii) (italicized below) to the existing clause (i), to include, in relevant part, any aircraft outside the United States

> (i) that has its next scheduled destination ... in the United States, if that aircraft next actually lands in the United States; or
>
> *(ii) having "an offense" as defined in the [Hague Convention] committed aboard, if that aircraft lands in the United States with the alleged offender still aboard ...*

Pub.L. No. 93–366, 88 Stat. 409, 410 (1974) (emphasis added). The amended definition added Hague Convention offenses committed aboard foreign aircraft not scheduled to land in the United States, but that do in fact land there. The purpose of the amendment was to implement the Hague Convention by "extend[ing] the definition to include ... categories of aircraft not now covered by existing law." H.R.Rep. No. 93–885, 93rd Cong., 2d Sess. 11, *reprinted in* 1974 U.S.Code Cong. & Admin.News 3975, 3977; H.R. Conf. Rep. No. 93–1194, 93rd Cong., 2d Sess. 14, *reprinted in* 1974 U.S.Code Cong. & Admin.News 3996, 3997. Jurisdiction over foreign aircraft that are scheduled to and do in fact land in the United States was retained unchanged from the original statute.

The definition of special aircraft jurisdiction reached its present form in 1984, when Congress amended the statute to cover certain offenses defined in the Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation (Sabotage) art. 1, §§ 1(d), 1(e), 24 U.S.T. 564, 568, T.I.A.S. No. 7570 (1971), *reprinted in* Documents Supplement, *supra*, at 308, 308–09 [hereinafter Montreal Convention]. *See* Pub.L. No. 98–473, 98 Stat. 1837, 2189 (1984). Clause (iii) (italicized below) was added to the existing clauses (i) and (ii) so that the special aircraft jurisdiction now includes, in relevant part:

> (d) any other aircraft outside the United States—
>
> (i) that has its next scheduled destination or last point of departure in the United States, if that aircraft actually lands in the United States;

> (ii) having "an offense" as defined in the [Hague Convention] committed aboard, if that aircraft lands in the United States with the alleged offender still aboard; or
>
> *(iii) regarding which an offense as defined in [certain parts of the Montreal Convention] is committed if the aircraft lands in the United States with an alleged offender still on board;*

49 U.S.C.App. § 1472(k)(1) (Supp. V 1987) (emphasis added). This amendment is analogous to the 1974 amendment in that it adds to the ambit of jurisdiction certain Montreal Convention offenses committed aboard foreign aircraft not scheduled to land in the United States, but actually landing there. The amendment "expands the protection accorded to aircraft ... by establishing criminal jurisdiction over certain aircraft-related offenses." S.Rep. No. 98–619, 98th Cong., 2d Sess. 1, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3682, 3682. And, like the 1974 amendment, it leaves intact jurisdiction over specified crimes committed on foreign aircraft scheduled to land and actually landing in the United States.

Defendant insists that the special aircraft jurisdiction should be read to cover foreign aircraft only when Hague or Montreal Convention offenses are committed on board. In other words, he contends, subsection (d)(i) does not stand on its own, but requires in addition the occurrence of (d)(ii) or (d)(iii). There is nothing in the legislative history to indicate that Congress meant to qualify the broad jurisdiction over crimes aboard foreign aircraft that it conferred in the 1961 and 1970 criminal provisions. Rather, the 1974 and 1984 amendments left the earlier provision intact while it expanded jurisdiction to include Hague or Montreal offenses committed aboard foreign aircraft that make *unscheduled* landings in the United States.

In 1986, Congress added chapter 109A of title 18 to the list of crimes punishable under 49 U.S.C.App. § 1472(k)(1). *See* Pub.L. No. 99–646, 100 Stat. 3592, 3624 (1986). The statute now reads:

Whoever, while aboard an aircraft within the special aircraft jurisdiction of the United States, commits an act which, if committed within the special maritime and territorial jurisdiction of the United States, as defined in section 7 of Title 18, would be in violation of section 113, 114, 661, 662, 1111, 1112, 1113, chapter 109A, or 2111 of such Title 18 shall be punished as provided therein.

49 U.S.C.App. § 1472(k)(1) (Supp. V 1987). Adding a reference to chapter 109A—and thus to section 2241 of title 18 under which defendant is charged—did not change the pattern of the underlying jurisdictional statute. Thus, the knowing engagement or attempted engagement in a sexual act with a child under the age of 12, aboard a foreign aircraft in non-United States airspace that is next scheduled to land and actually lands in the United States, is a federal crime punishable in a United States court.

### IV. Constitutional Limitations on the Creation of Federal Crimes and Jurisdiction

■ There is no merit to defendant's suggestion that the statute is unconstitutional as interpreted. There are ample bases for the exercise of this special aircraft jurisdiction.

Congress did not expressly indicate the constitutional bases for the criminalization of sexual abuse aboard foreign aircraft in non-United States airspace bound for and landing in the United States. The predecessor statute, the Federal Aviation Act amendments of 1961, with its jurisdictional scope of "air commerce," took as its constitutional basis the commerce clause, U.S. Const. art. I, § 8, cl. 3. *See* H.R.Rep. No. 958, 87th Cong., 1st Sess. 5–6, *reprinted in* 1961 U.S.Code Cong. & Admin.News 2563, 2564–65. As for special aircraft jurisdiction, the Senate merely stated in its report that the new definition of special aircraft jurisdiction, while expansive, "still falls wholly within the jurisdiction of the Federal Government under the Constitution." S.Rep. No. 91–1083, 91st Cong., 2d Sess. 1 (1970), *reprinted in* 1970 U.S.Code Cong. & Admin.News 3996, 3997.

Congress has broad authority under the commerce clause, empowering it to "regulate Commerce with foreign Nations," to criminalize activities affecting our foreign commerce. United States Const. art. I, § 8, cl. 3. *Cf. Perez v. United States*, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971) (congressional power to use commerce clause to criminalize interstate extortionate credit transactions). The criminal statutes at issue here afford comfort to both American and foreign passengers flying aboard foreign airlines into the United States; it thus encourages air commerce between this and other nations. There can be little doubt that some passengers traveling with young children might feel some added sense of security in knowing that this country was reaching out its protective arm from the point of embarkation abroad to the point of arrival in this country. While the effect on numbers of passengers may be slight, it is not too negligible for Congress's ever vigilant concern.

Congress's authority to act vis-à-vis the states is clear: uniform federal legislation is necessary to solve the problem of conflicting or ambiguous state claims of jurisdiction, H.R.Rep. No. 958, 87th Cong., 1st Sess. 4–5, *reprinted in* 1961 U.S.Code Cong. & Admin.News 2563, 2564–65 (discussing Federal Aviation Act Amendments of 1961), although concurrent state jurisdiction appears to have been retained. *Id.*

The necessary and proper clause, article 1, section 8, clause 18, as well as section 2 of article III, grants Congress the authority to make laws enforceable in our courts implementing treaties to which the United States is a party, as long as these laws are not otherwise constitutionally infirm. *Missouri v. Holland*, 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed. 641 (1920). *See generally McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 421, 4 L.Ed. 579 (1819). The special aircraft jurisdiction can be constitutionally justified as implementing the Tokyo, Hague and Montreal Conventions.

Additional constitutional authority can be found in article I, section 8, clause 10, which vests power in Congress to "define and punish Piracies and Felonies committed

on the high Seas, and Offenses against the Law of Nations." Most of the Framers were probably not prescient enough to foresee the age of air flight, although Benjamin Franklin observed the first hot air balloon flights near Paris, and later mused, "I had sometimes wished I had brought with me from France a balloon sufficiently large to raise myself from the ground. In my malady it would have been the most easy carriage for me, being led by a string held by a man walking on the ground." Letter to Jean–Baptiste Le Roy, April 18, 1787, *reprinted in 9 The Writings of Benjamin Franklin* 572–73 (A. Smyth ed. 1907). Yet, the analogy of the "high skies" to the "high seas" is apt, and aggravated sexual abuse is a felony. 18 U.S.C. § 2241(c) (Supp. V 1987).

Many crimes committed aboard aircraft are considered both by the United States and the international community to be "Offenses against the Law of Nations." *See, e.g.,* Aircraft Sabotage Act of 1984, § 2012, Pub.L. No. 98–473, 98 Stat. 1837, 2187 (Offenses proscribed by Montreal Convention and by Aircraft Sabotage Act are "offenses against the law of nations."); *Restatement (Third) of the Foreign Relations Law of the United States* § 404, at 254 (1987) [hereinafter Restatement] ("attacks on or hijacking of aircraft" are the object of universal jurisdiction); *id.,* Reporters' Note 1, at 256 (Hague and Montreal Conventions provide for general jurisdiction); Mendelsohn, *In–Flight Crime: The International and Domestic Picture Under the Tokyo Convention,* 53 Va.L.Rev. 509, 555 (1967) (acts proscribed by 49 U.S.C.App. 1472(k) are universally recognized and condemned). The special aircraft jurisdiction can be justified as "necessary and proper" to deal with such offenses.

As for congressional authority to confer subject matter jurisdiction on the district courts, article 1, section 8, clause 9, as well as article III, grants Congress the power to prescribe the jurisdiction of the lower federal courts. Since the case at bar is a prosecution under a federal criminal statute, it "arises under" federal law pursuant to article III, and Congress has the authority to confer upon the federal district courts

jurisdiction to hear it. *See Verlinden BV v. Central Bank of Nigeria,* 461 U.S. 480, 492–93, 103 S.Ct. 1962, 1970–71, 76 L.Ed.2d 81 (1983). The fact that the parties are both foreign is no barrier. *Id.*

There is likewise no constitutional prohibition against exercising personal jurisdiction over the defendant, who voluntarily entered the United States. The courts have generally found the exercise of personal jurisdiction over a criminal defendant to be proper even where defendant was forcibly abducted into the forum. *See, e.g., Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886); *United States ex rel. Lujan v. Gengler,* 510 F.2d 62 (2d Cir.1975); *In re Petition of Ahmad,* No. 89 CV 715, slip op. at 15–17, 1989 WL 113157 (E.D.N.Y. Sep. 26, 1989). *But see Restatement, supra,* § 421 Comment e, at 307 & Reporters' Note 5, at 310–11.

V. International Law Limitations on the Creation of Federal Crimes and Jurisdiction

The special aircraft jurisdiction statute was originally created to comply with treaty obligations under the Tokyo Convention. While the Tokyo Convention was intended primarily to deal with the punishment of air piracy, it was also designed to cover any other criminal offense. Article 1 defines the Tokyo Convention's scope as covering:

a) offences against penal law;

b) acts which, whether or not they are offences, may or do jeopardize the safety of the aircraft or of persons or property therein or which jeopardize good order and discipline on board.

20 U.S.T. at 2943, *reprinted in Documents Supplement, supra,* at 296. The record of the drafting conference reports that the secretary general of the conference stated that the Convention was intended to apply to all penal offences "irrespective of whether or not they affected the safety of the aircraft." 1 International Civil Aviation Organization, *International Conference on Air Law, Tokyo, August–September*

*1963* 16 (1966). *See* 1 P. Keenan, A. Lester, P. Martin & J. McMahon, *Shawcross and Beaumont on Air Law* 702–03 (3d ed. 1966); Mendelsohn, *In–Flight Crime: The International and Domestic Picture Under the Tokyo Convention,* 53 Va.L.Rev. 509, 521 (1967). While the United States delegate expressed misgivings about article 1(a), he strongly supported article 1(b), 1 International Civil Aviation Organization, *supra,* at 17. The United States signed and ratified the Convention, including article 1(a), without reservations. 20 U.S.T. at 2958.

The Tokyo Convention's primary goal was to encourage nations to exercise jurisdiction over crimes committed aboard aircraft registered in that nation. Nevertheless, the Tokyo Convention explicitly provides for jurisdiction over crimes committed aboard aircraft of foreign registry. Article 3(3) provides, "This Convention does not exclude any criminal jurisdiction exercised in accordance with national law." 20 U.S.T. at 2944, *reprinted in Documents Supplement, supra,* at 297. *See* S.Exec. Doc. L, 90th Cong., 2d Sess. 3 & 6 (1968) (President and Secretary of State note that Tokyo Convention allows exercise of jurisdiction over crimes committed on foreign aircraft); S.Exec.Rep. No. 3, 91st Cong., 1st Sess. 7 (1969) (Senate Foreign Relations Committee report on Tokyo Convention noting jurisdiction over foreign aircraft); S.Rep. No. 91–1083, 91st Cong., 2d Sess. 2 (1970), *reprinted in* 1970 U.S.Code Cong. & Admin.News 3996, 3997 (report accompanying legislation creating special aircraft jurisdiction, noting the Convention's provision of concurrent jurisdiction); 1 P. Keenan, A. Lester, P. Martin & J. McMahon, *Shawcross and Beaumont on Air Law* 704 (3d ed. 1966) ("The principle of concurrent jurisdiction is retained."); *id.* at 705 ("[T]here is nothing in the Convention to prevent a State with only remote contacts from exercising jurisdiction.").

Defendant contends that jurisdiction over foreign aircraft is limited by article 4 of the Tokyo Convention. The limitations of article 4 apply to attempts to "interfere with an aircraft in flight to exercise ... criminal jurisdiction." 20 U.S.T. at 2944. Interference means forcing the aircraft to land, or unduly delaying the flight. *International Conference on Air Law, Tokyo, August– September 1963* 100–05 (1966); N. Matte, *Treatise on Air–Aeronautical Law* 339–40 (1981); 1 P. Keenan, A. Lester, P. Martin & J. McMahon, *supra,* at 705; Mendelsohn, *In–Flight Crime: The International and Domestic Picture Under the Tokyo Convention,* 53 Va.L.Rev. 509, 518 (1967). There is no contention or evidence that the defendant's flight was in any way diverted, delayed or forced to land in order to arrest him or aid in his prosecution.

When the Senate ratified the Tokyo Convention, it was made aware of the broad jurisdiction that the Convention allowed. A deputy legal advisor to the Department of State told the Senate in hearings on the matter that the Convention "would permit the United States to continue to exercise jurisdiction over acts aboard foreign aircraft flying to, in, or from the United States." S.Exec.Rep. No. 3, 91st Cong., 1st Sess. 7 (1969).

The Tokyo Convention's concurrent jurisdiction provisions reflect the international legal community's acceptance of broad bases for jurisdiction over criminal offenses occurring on aircraft. *See generally Restatement, supra* § 402 Comment h, at 240–41, § 403 Reporters' Note 9, at 253–54 (suggesting that acts aboard aircraft be considered a basis of jurisdiction independent of traditional bases in international law, and approving the exercise of criminal jurisdiction over an offense committed on foreign aircraft, especially if the offense involved the use of force). *See also* N. Matte, *Treatise on Air–Aeronautical Law* 332 (1966). Numerous other signatories to the Tokyo Convention have passed statutes conferring jurisdiction over crimes committed aboard foreign aircraft. *See, e.g.,* Code de L'Aviation Civile, Loi No. 72–623, 5 juillet 1972, art. L. 121–8, J.O. 7179 (July 9, 1972), Gazette du Palais (Legislation) 360 (2e Semestre 1972), *translated in* N. Leech, C. Oliver & J. Sweeney, *The International Legal System* 278 (1973) (French statute conferring jurisdiction based on place of landing); 2 Codes Belges (Penal)

Aeronautique, 27 juin 1937, art. 36 (J. Servais & E. Mechelynck, 26e Supp. May 1 1983), 2 Les Codes Larcier (Penal) Navigation Aerienne, 27 juin 1937, art. 36 (1985), *translated in* 1 Senate Comm. on Com., Air Laws and Treaties of the World 257–58 (Comm.Print 1965) (Belgian code conferring jurisdiction based on place of landing, or location of accused in Belgium). *See also* Civil Aviation Act 1982, c. 16, § 92(3) (United Kingdom statute conferring jurisdiction based on location of accused in United Kingdom); 2 International Civil Aviation Organization, *International Conference on Air Law, Tokyo, August–September 1963* 38–39 (proposal considered at Tokyo Convention conference to establish place of landing as the highest priority basis of jurisdiction; in the end, the Tokyo Convention did not include any priority ranking of jurisdiction).

Extension of jurisdiction to include criminal acts committed against foreign nationals aboard a foreign airliner bound for, and actually landing, at a United States airport makes good sense. The pilot can radio ahead for assistance, federal agents can be present to take the culprit into custody at once and the witnesses to the crime will be immediately available. If the United States did not exercise its jurisdiction, there is no guarantee that any other country would do so, since the Tokyo Convention does not oblige a state to prosecute alleged offenders. Mendelsohn, *In–Flight Crime: The International and Domestic Picture Under the Tokyo Convention,* 53 Va.L.Rev. 509, 516 (1967). For would-be criminals, it may have an inhibiting effect to know that upon landing they may be immediately apprehended and prosecuted.

Even if Congress's criminalization of defendant's alleged acts and its exercise of jurisdiction were counter to international law, this fact does not lessen the validity of the statutes as superseding domestic legislation. International law is "subject to the Constitution, and is also subject to 'repeal' by other law of the United States." *Restatement, supra* ch. 2, Introductory Note, at 40; *id.* § 111(2), at 42. While the courts must make a fair effort to interpret domestic law in a way consistent with international obligations, *see, e.g., Weinberger v. Rossi,* 456 U.S. 25, 32, 102 S.Ct. 1510, 1515, 71 L.Ed.2d 715 (1982); *Murray v. Schooner Charming Betsy,* 6 U.S. (2 Cranch) 64, 118, 2 L.Ed. 208 (1804); *Restatement, supra* § 114, at 62, in the event of irreconcilable conflict, the courts are bound to apply domestic law if it was passed more recently. *Reid v. Covert,* 354 U.S. 1, 18, 77 S.Ct. 1222, 1231, 1 L.Ed.2d 1148 (1957); *Chinese Exclusion Case,* 130 U.S. 581, 600, 9 S.Ct. 623, 627, 32 L.Ed. 1068 (1889); *Restatement, supra* § 115(1)(a), at 63. The statutory provisions under which defendant is being prosecuted were passed subsequent to the development of the traditional notions of international law jurisdiction to which defendant argues this court is confined. They were also passed subsequent to the Tokyo Convention. The domestic statutes are controlling.

## V. Jurisdiction of Other Interested Nations Over Defendant

Consistent with the Tokyo Convention, other interested countries could prosecute the defendant for his alleged acts. Since the defendant is Romanian and the victim is Norwegian, Romania and Norway would be the most likely countries to have an interest in this case. Both countries are party to the Tokyo Convention. *See Documents Supplement, supra,* at 296 (listing parties). The United States has extradition treaties with both countries. *See* Treaty Between the United States and Rumania for the Extradition of Fugitives from Justice, July 23, 1924, 44 Stat. 2020, T.S. No. 713; Supplementary Extradition Treaty Between the United States of America and Rumania, November 10, 1936, 50 Stat. 1349, T.S. No. 916; Extradition Treaty Between the United States of America and the Kingdom of Norway, 31 U.S.T. 5621, T.I.A.S. No. 9679.

The treaty with Romania makes "carnal knowledge of children under the age of twelve years" an extraditable offense. Extradition Treaty Between the United States and Rumania, art. II(3), 44 Stat. at 2021. It is doubtful whether the act of sexual

abuse alleged in the indictment could come under this provision.

The treaty with Norway makes extraditable "an offense against the laws relating to sexual offenses with or upon a minor or other person, including rape, unlawful intercourse, indecent assault, procuration, illegal abortion." Extradition Treaty Between the United States and Norway, Schedule of Offenses, 31 U.S.T. at 5634. The alleged act of sexual abuse would probably come under this section.

It is unclear whether the domestic criminal statutes of Norway and Romania would apply to this case. This court's requests that the United States provide this information have been unavailing. It does appear, however, that the Norwegian Criminal Code makes punishable sexual molestation of a Norwegian national by a foreigner abroad. *See The Norwegian Penal Code* § 12(4)(a) & § 195 (H. Schjoldager, trans. 1961); J. Andenaes, *The General Part of the Criminal Law of Norway* 320 (T. Ogle, trans. 1965). Thus it is possible that defendant can be extradited to Norway to stand trial.

While extradition can be a complex process, prosecution in Norway may place less of a burden on the alleged victim, who has returned to Norway and must now be brought back to the United States for a trial, where she is likely to face further trauma on the witness stand.

In a case such as this one, the United States' initial exercise of jurisdiction may have been reasonable in order to detain the alleged criminal and gather evidence. Further prosecution in this country under these circumstances may create logistical problems involving the location of witnesses, and evidentiary obstacles involving the testimony of the alleged victim. Evidentiary issues in the taking of the child's testimony will be the subject of a subsequent memorandum.

## VI. Power of Courts to Refuse Jurisdiction

Despite this court's reservations about the wisdom of further prosecution in this country, it lacks the power to refuse jurisdiction on equitable grounds. The court is empowered to dismiss a criminal case only for unnecessary delay, Fed.R.Crim.P. 48(b), failure to comply with the time limits set by the Speedy Trial Act, 18 U.S.C. § 3161 (1982) or lack of jurisdiction or the failure of the indictment to charge an offense, Fed.R.Crim.P. 12(b)(2). *See* 1 C. Wright, Federal Practice and Procedure § 3, at 12 (1982) (Rule 48(b) and Speedy Trial Act); *United States v. Weinstein*, 511 F.2d 622, 627 (2d Cir.), *cert. denied*, 422 U.S. 1042, 95 S.Ct. 2655, 45 L.Ed.2d 693 (1975) (Rule 12(b)(2), and generally noting the limited power of the court to act sua sponte); *United States v. Dooling*, 406 F.2d 192 (2d Cir.), *cert. denied*, 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969) (Rule 48(b), and generally noting that "inherent power of a district court 'to do justice'" is limited). In this case, where jurisdiction exists, the indictment properly charges an offense, and the prosecution is timely, the court must allow the case to proceed. The decision on whether to prosecute or refrain and leave prosecution to another country is entirely one for the prosecutor, guided by the Departments of Justice and State.

## VII. Conclusion

Prosecution of this defendant for the acts alleged is proper. The motion to dismiss is denied.

So ordered.