**UNITED STATES of America, for the Use and Benefit of A. HOLLOW METAL WAREHOUSE, INC., an Illinois corporation, Plaintiff,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY, a Maryland corporation, and Bayfield Construction Co., Inc., an Illinois corporation, Defendants.**

No. 87 C 1141.

United States District Court, N.D. Illinois, E.D.

Dec. 7, 1988.

Peter G. Swan, Emalfarb, Swan & Bain, Highland Park, Ill., for plaintiff.

Scott F. Turow, Steven M. Levy, Sonnenschein Carlin Nath & Rosenthal, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

In an effort to fulfill its construction contract with the United States Navy, defendant Bayfield Construction Co. ("Bayfield") entered into a subcontract with plaintiff A. Hollow Metal Warehouse ("A. Hollow Metal"). Under the terms of the subcontract, A. Hollow Metal was to produce hollow metal doors that conformed to Navy specifications. Instead, A. Hollow Metal provided Bayfield with nonconforming doors, thereby delaying completion of the construction project. Due in part to this delay, the Navy rescinded its contract with Bayfield. When Bayfield refused to pay A. Hollow Metal for the nonconforming doors, the subcontractor sued the contractor and its surety, United States Fidelity & Guaranty Co. In response, Bayfield filed a counterclaim against A. Hollow Metal. On June 24, 1988, this court denied defendants' motion for summary judgment. At that time, the court concluded that the Navy's unilateral change order P00003 raised a genuine factual issue as to whether the Navy accepted some of the nonconforming doors. Defendants now move the court to reconsider its previous denial of summary judgment. Upon further consideration, this court enters summary judgment for defendants with respect to all of A. Hollow Metal's claims. The court also grants Bayfield's motion for summary judgment as to Count I of its counterclaim, which alleges breach of contract.

As a preliminary matter, the court rejects A. Hollow Metal's contention that defendants did not timely file their motion for reconsideration. Based on Fed.R.Civ.P. 59(e), A. Hollow Metal claims that defendants should have served the motion for reconsideration within 10 days after this court denied defendants' motion for summary judgment. In advancing this procedural argument, A. Hollow Metal ignores the fact that Rule 59(e) applies only when a court has entered judgment. In the instant

case, the order under reconsideration—a denial of summary judgment—constitutes an interlocutory order, not a final judgment. The Federal Rules of Civil Procedure place no time constraints on motions to reconsider interlocutory orders. This court may entertain a motion to reconsider the denial of summary judgment at any time while this litigation is pending.

Turning to the merits of this case, the court regards its June 24 order as a fitting candidate for reconsideration. After all, the court concluded last June that A. Hollow Metal's complaint had barely survived defendants' motion for summary judgment. As the court observed when it struck A. Hollow Metal's defenses to Bayfield's counterclaim on June 28, 1988, the outcome of this case hinges on one solitary issue: Did the Navy accept any of the nonconforming doors? A. Hollow Metal argues that the Navy accepted several revised submittals that altered the specifications for the doors. These submittals, however, did not disclose the full extent to which the doors deviated from Navy specifications. According to the affidavit of Lieutenant James Walter, the Naval officer in charge of the construction project, the Navy rejected these doors after learning of previously undisclosed discrepancies between the doors and the contract specifications. Under the law of government contracts, the Navy has the prerogative to reject products that it previously agreed to accept if the Navy subsequently discovers additional deviations from government specifications. *See New Ric Construction Co., Inc.,* 86–3 B.C.A. (CCH) ¶ 19,035 (1986).

Only one document—the Navy's March 1986 change order—suggests that the Navy even considered accepting any nonconforming doors. The unilateral change order P00003 indicated that the Navy would accept 383 nonconforming doors. This change order formed the sole basis for the court's previous denial of summary judgment. The court reasoned that the change order seemed to contradict Lieutenant Walter's assertion that the Navy had not accepted any A. Hollow Metal doors.

Upon reconsideration, however, this court must revise its earlier assessment of the change order. In a subsequent affidavit, Lieutenant Walter has testified that the change order constituted a preliminary proposal, not a final acceptance of the nonconforming doors. As evidence of the tentative nature of the order, Walter points to his March 17, 1986 letter to Bayfield. This letter, which accompanied the change order, stated that the Navy would accept the nonconforming doors only after receiving an appropriate credit. The letter also referred to negotiations concerning the final resolution of the change. Based on Walter's correspondence with Bayfield and his latest affidavit, this court concludes that the change order did not represent a final agreement by the Navy to accept the doors. Consequently, the change order is not at all inconsistent with Walter's statement that the Navy ultimately rejected all of the doors. As Walter explained in his latest affidavit, the Navy withdrew its proposal to accept 383 nonconforming doors after learning of additional problems with the doors.

In a feeble effort to counter Walter's most recent affidavit, A. Hollow Metal submits the affidavit of its president, Gene Wozniak. Wozniak claims that change order P00003 was a final change order, but he lacks any personal knowledge on which to base this claim. Wozniak never participated in the negotiations between the Navy and Bayfield. His characterization of the change order rests entirely on hearsay—a memorandum describing a meeting between the Navy and Bayfield. Because Wozniak's statements about the change order lack any foundation in personal knowledge, they do not comply with Fed.R.Civ.P. 56(e). As a result, Wozniak's affidavit, based solely on hearsay, cannot preclude summary judgment. *See Pfeil v. Rogers,* 757 F.2d 850, 860–63 (7th Cir.1985), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986). In any event, the memorandum on which Wozniak relies fails to refute Walter's statement that the Navy ultimately rejected all of the doors.

Finally, in a last desperate attempt to avert summary judgment, A. Hollow Metal challenges the continuing vitality of the Buy American Act, 41 U.S.C. §§ 10a–10d (1982). Based on the Buy American clause in the Navy's contract with Bayfield, the Navy rejected A. Hollow Metal's Canadian-made doors. A. Hollow Metal now argues that the Navy had no right to refuse the doors simply because of their foreign manufacture. According to A. Hollow Metal, the Trade Agreements Act of 1979, 19 U.S.C. §§ 2501–2582 (1982), supplanted all purchasing requirements imposed by the Buy American Act. This court disagrees. Far from prohibiting any preferences for domestic products, the Trade Agreements Act merely gave the President the option to waive Buy American requirements in the context of government procurement. *Id.* § 2511. Absent an explicit executive waiver of domestic preferences in procurement, the Buy American clause in Navy construction contracts remains enforceable. In fact, as recently as last year, the Board of Contract Appeals enforced a Buy American clause in a Navy contract. *See Swanson Products*, 87–1 B.C.A. (CCH) ¶ 19,661 (1987). Moreover, even assuming that the Navy could not enforce its Buy American clause, Walter points out that the Navy had a legitimate alternative basis for rejecting the doors: their inadequate fire-rating. Thus, the Navy acted well within its authority when it declined to accept the doors.

Ultimately, A. Hollow Metal cannot possibly recover damages in this case unless the Navy accepted some of the nonconforming doors. Lieutenant Walter's latest affidavit has convinced this court that the Navy never accepted any of A. Hollow Metal's doors. Consequently, the court enters summary judgment for defendants with respect to all claims made in A. Hollow Metal's complaint. Moreover, this court's revised interpretation of the change order leaves A. Hollow Metal without a defense against Bayfield's breach-of-contract counterclaim. A. Hollow Metal had previously raised the defense of accord and satisfaction. To establish an enforceable accord and satisfaction, however, A. Hollow Metal must demonstrate a meeting of the minds with the intent to compromise. *See L.W. Foster Sportswear Co. v. Goldblatt Bros., Inc.*, 356 F.2d 906, 908 (7th Cir.1966); *Polin v. Major*, 150 Ill.App.3d 854, 856, 104 Ill.Dec. 92, 93, 502 N.E.2d 355, 356 (1986). Despite negotiations to resolve their dispute over the nonconforming doors, the Navy and Bayfield never reached agreement on a compromise. The change order merely constituted a proposal, not a settlement of the dispute. Since the Navy and Bayfield never consummated an accord and satisfaction, the court enters summary judgment for Bayfield with respect to Count I of its counterclaim against A. Hollow Metal.

IT IS SO ORDERED.