**UNITED STATES of America,**

v.

**Omar Mohammed Ali REZAQ, a/k/a Omar Marzouki, a/k/a Omar Amr, Defendant.**

**Crim. No. 93–0284 (RCL).**

United States District Court, District of Columbia.

Sept. 20, 1995.

Joseph Benard Valder, Asst. U.S. Atty., U.S. Attorney's Office, Washington, DC, for plaintiff.

Santha Sonenberg, William Gregroy Spencer, Beth Susan Brinkman, Federal Public Defender for District of Columbia, Washington, DC, for defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the court on a motion filed by the United States to reconsider the court's July 27, 1994 Discovery

Order and July 27, 1994 Protective Order, and on a series of motions filed by the defendant to dismiss the indictment in this case. The United States asks this court to revise the Discovery Order so as to deny defendant's motion to compel a government response to defendant's Rule 16 discovery requests for information relevant to defendant's double jeopardy and Speedy Trial Act defenses. The government contends that it should not be required to comply with these discovery requests because both the double jeopardy and Speedy Trial Act defenses are unavailable to the defendant as a matter of law. The United States also asks the court to modify the Discovery Order to permit the government to seek future leave to file *in camera* submissions *ex parte*. Finally, the United States moves this court to modify the Protective Order to require defendant to return all classified documents produced during discovery that the court determines are "not" material to defendant's defense after adversarial treatment of the issues, and to prohibit the defendant's attorneys from making any further use of non-material classified information produced during discovery.

The defendant has filed a number of motions to dismiss the indictment in this case, three of which are dealt with in this memorandum opinion. Specifically, defendant asks this court to dismiss the indictment on the grounds that the United States' prosecution of the defendant for aircraft piracy violates the Double Jeopardy Clause. Defendant also moves for dismissal on the grounds that the government's prosecution violates the 30 day time limit imposed by the Speedy Trial Act. Finally, defendant seeks dismissal for lack of jurisdiction over the hijacking offense.

Upon careful consideration of the filings and arguments of counsel, the court shall grant in part and deny in part the United States' motion to reconsider the Discovery Order and Protective Order. The court agrees with the government that defendant's double jeopardy defense fails as a matter of law. Accordingly, for the reasons set forth below, the court shall grant the government's motion to reconsider the Discovery Order so as to deny defendant's motion to compel production of information pertaining to defen-

dant's double jeopardy defense. Furthermore, in light of the court's finding that defendant's double jeopardy defense fails as a matter of law, the court shall deny defendant's motion to dismiss on double jeopardy grounds. The court also concurs with the government's position that defendant's Speedy Trial Act defense fails as a matter of law. Accordingly, the court shall grant the government's motion to reconsider the Discovery Order so as to deny defendant's motion to compel production of information pertaining to defendant's Speedy Trial Act defense. Furthermore, in light of the court's finding that defendant's Speedy Trial Act defense fails as a matter of law, the court shall deny defendant's motion to dismiss for violation of the Speedy Trial Act. The government's motion is also granted with respect to the court's prohibition on seeking leave to file on *ex parte* submissions. The court shall modify the Discovery Order so as to permit the government, under certain circumstances, to seek leave to file *in camera* submissions *ex parte*. The court shall also grant the government's motion to modify the Protective Order to require defendant to return of all classified documents produced during discovery that the court determines are not "material" to defendant's defenses following adversarial treatment of the issues. The court, however, declines to reconsider other aspects of the Discovery Order and the Protective Order at this time. Finally, the court shall deny defendant's motion to dismiss for lack of jurisdiction.

## I.

## BACKGROUND

Defendant Omar Mohammed Ali Rezaq has been indicted on one count of aircraft piracy for allegedly hijacking Egyptair Flight Number 648 on November 23, 1985. According to the government, Rezaq and two other men hijacked Flight 648 while en route from Athens, Greece to Cairo, Egypt, and forced the pilots to land the airplane at Hal Luga Airport in Malta. Shortly thereafter, the hijackers allegedly singled out for execution the American and Israeli passengers, and positioned each of them in front of the opened door of the aircraft. One by one, the

hijackers allegedly shot each of these passengers from behind at point blank range. The passengers were then thrown onto the tarmac below. Two of these passengers, one of whom was an American citizen, died from their wounds.

The incident ended when an Egyptian commando unit stormed the plane to rescue the remaining passengers and apprehend the hijackers. In the ensuing melee, 57 passengers were killed. Rezaq was captured and turned over to Maltese authorities, whereupon he was tried and convicted under Maltese law of murder, attempted murder, and the unlawful taking of hostages. Rezaq was sentenced to twenty-five years incarceration in a Maltese prison, but, for reasons that remain unclear, he was released in 1993 after having served only seven years of the sentence and permitted to board an airplane bound for the Sudan.

Rezaq's flight itinerary was to carry him to the Sudan via Ghana, Nigeria, and Ethiopia. Upon reaching Ghana, however, Rezaq was detained by Ghanian officials, who subsequently released him to his original itinerary. When Rezaq landed in Nigeria, Nigerian authorities escorted him to an aircraft chartered by the United States Federal Bureau of Investigation. Rezaq was then flown to the United States. While en route to the United States, a federal grand jury of the District of Columbia returned an indictment, charging Rezaq with aircraft piracy. FBI agents executed an arrest warrant upon Rezaq's arrival at Dulles Airport, and escorted Rezaq to the federal courthouse of the District of Columbia. Shortly thereafter, the grand jury returned a superseding indictment, on which defendant was arraigned.

On July 22, 1993, defendant sent the prosecution a letter detailing several discovery requests. The government responded to some, but not all of defendant's requests. Defendant then filed a series of motions to dismiss the indictment as well as a motion to compel the government to produce evidence pertaining to the unanswered requests.[1] The United States opposed the motion, and filed a number of discovery-related motions of its own, including a motion for a protective order to establish security procedures for classified documents made available during discovery. On July 27, 1994, this court issued a Discovery Order, a Protective Order, and an accompanying Memorandum Opinion on Discovery resolving the discovery motions. The United States now asks the court to reconsider aspects of both of these Orders. The government's motion to reconsider as well as three of defendant's motions to dismiss are discussed below.

## II.

## DISCUSSION

A. Motion to Reconsider the Discovery Order with Respect to Discovery Request Number 9

■ A district court "always ha[s] the power to modify earlier orders in a pending case." *Kapco Mfg. Co. v. C & O Enterprises, Inc.,* 773 F.2d 151, 154 (7th Cir.1985). Moreover, it is well established that a district court has the inherent power to reconsider interlocutory orders and reopen any part of a case before entry of final judgment. *See Marconi Wireless Tel. Co. v. United States,* 320 U.S. 1, 47–48, 63 S.Ct. 1393, 1414–15, 87 L.Ed. 1731 (1943). This authority does not rest in any particular federal rule, but emanates from the inherent power of the court. *See A Hollow Metal Warehouse v. United States Fidelity & Guar. Co.,* 700 F.Supp. 410, 411–12 (N.D.Ill.1988). Thus it is within a district court's discretion to revisit previously issued orders while the case is still pending before the court.

In discovery request number 9,[2] the defendant sought the production of certain infor-

---

1. Some new requests were also included in defendant's motion to compel. The government, however, does not seek reconsideration of the court's ruling as to these newer requests.

2. Defendant made discovery request number 9 pursuant to Federal Rule of Criminal Procedure 16(a)(1)(C). Rule 16(a)(1)(C) provides as follows:

Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and *which are relevant to the preparation of defen-*

mation the defendant believed was material to his double jeopardy defense. Defendant's double jeopardy defense is premised on a showing that the United States government was so extensively involved in the Maltese prosecution that defendant in effect has been prosecuted twice by the United States for the same offense. Thus, defendant asked the government to produce:

All documents concerning any advice, assistance requests or any other communication between the government of the United States and Malta concerning the apprehension, investigation, trial, or sentencing of the defendant in Malta

The names, last known addresses and phone numbers of any individual in the government of the United States or the government of Malta known to have information concerning the role the United States played in the apprehension, investigation, trial or sentencing of the defendant.

Letter from Defendant to U.S. Attorney of July 22, 1993, at 4. When the government failed to respond to defendant's request, defendant filed a motion to compel production of the information. Defendant argued in his motion that "[d]ocuments in the possession of the government shedding light on the role of the United States in the apprehension, investigation, trial, or sentencing of Mr. Rezaq are relevant to and necessary for resolution of this claim." Def.'s Mot. to Compel Disc., at 20.

The government countered in its opposition that it should not be required to comply with this request because defendant's double jeopardy defense fails as a matter of law. See Govt.'s Opp'n to Def.'s Mot. to Compel Disc., at 24. The government's position was supported by two arguments previously asserted in its opposition to defendant's motion to dismiss on double jeopardy grounds. See Govt.'s Opp'n to Def.'s Mots. to Dismiss, at 25–31. First, the government argued that it was beyond dispute that the United States and Malta are separate sovereigns with independent prosecutorial authority, and that ex-

tensive U.S. involvement in the Maltese prosecution "does not lead to the inference, let alone the conclusion, that the Maltese prosecution was a 'sham and a cover' for the United States prosecution." See id., at 29. Second, the government argued that defendant's double jeopardy defense fails because the defendant was never "twice put in jeopardy" for the same offense. U.S. Const. Amend. V. The statutory offense of aircraft piracy, the government contended, is a completely different offense than the offenses charged by the Maltese prosecution. The government concluded that the discovery request should be excluded entirely because the evidence sought by the discovery request is not relevant to any defense available to the defendant.

The court found the government's position unpersuasive. The court reasoned that defendant's double jeopardy argument was "not wholly unsupported by legal authority," and pointed out that defendant's double jeopardy defense might well succeed if the defendant could discover evidence sufficient to show that Malta's prosecution was merely a tool for the United States government. United States v. Rezaq, 156 F.R.D. 514, 521 (D.D.C. 1994) (citing Bartkus v. Illinois, 359 U.S. 121, 123–24, 79 S.Ct. 676, 678–79, 3 L.Ed.2d 684 (1959) [hereinafter July 27, 1994 Mem. Op. on Disc.]. Moreover, the court found that defendant's discovery request was "tailored to develop evidence that [would] offer material support" for defendant's double jeopardy defense.[3] See July 27, 1994 Mem. Op. on Disc., at 16. The court therefore held that defendant was entitled to this information under Rule 16 and granted defendant's motion to compel.

The United States argues in its motion to reconsider that the court, in ruling on defendant's motion to compel, failed to consider the merits of the government's second argument against defendant's double jeopardy defense. The government maintains that had the court considered its second argument and compared the offenses charged by the United

---

dant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant. Id. (emphasis added).

**3.** Because the prosecution failed to contest the materiality of defendant's request, the court treated the issue of materiality as conceded. See July 27, 1994 Mem.Op. on Disc., at 16.

States and Maltese prosecutions, the court would have been compelled to reach the conclusion that defendant's double jeopardy claim fails as a matter of law because defendant has not been charged with the same offense twice. Thus, even if the United States *itself* had successfully prosecuted defendant Rezaq for the offenses to which he plead in Malta, the Double Jeopardy Clause would not bar the United States from prosecuting the defendant a second time for violating the aircraft piracy statute. *See United States v. Dixon*, — U.S. —, —, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993). The government urges the court to reconsider and deny defendant's motion to compel a government response to this discovery request.

The court finds this second argument persuasive. The Maltese indictment charged defendant Rezaq with nine separate offenses: (1) arresting and holding persons against their will without the requisite authority to do so; (2) attempted willful homicide of Methad Mustafa, an Egyptian Sky Marshal; (3) attempted willful homicide of Tamar Artzi, the surviving Israeli passenger; (4) willful homicide of Nitzan Mendelson, an Israeli passenger; (5) attempted willful homicide of Patrick Baker, an American passenger; (6) willful homicide of Scarlet Rogenkamp, an American passenger; (7) attempted willful homicide of Jackie Pflug, an American passenger; (8) possession of explosives; and (9) possession of firearms. *See* Maltese Indictment Num. 4/88, at 1–18.[4] The United

States, in contrast, seeks to prosecute defendant for aircraft piracy.[5] 49 U.S.C.A.App. §§ 1472(n)(1), 1472(n)(1)(B). The aircraft piracy statute under which defendant Rezaq is charged seeks to punish individuals who seize control of an aircraft by "force or threat thereof, or by any other form of intimidation" when the aircraft is in flight outside the special aircraft jurisdiction of the United States. *See* 49 U.S.C.A.App. §§ 1472(n)(1), 1472(n)(2)(A). The aircraft piracy statute also provides a penalty enhancement up to life imprisonment or death if the death of another person "results from the commission ... of the offense." 49 U.S.C.A.App. § 1472(n)(1)(B).

■ The determination for double jeopardy purposes as to whether aircraft piracy is the same offense as one or all the offenses for which the defendant was previously prosecuted and convicted in Malta turns on an analysis of the elements of the offenses charged. If each offense contains a legal element not included in the other offenses, then the Double Jeopardy Clause will not bar the successive prosecution. *See Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *United States v. Fontanez*, 869 F.2d 180, 182–83 (2nd Cir. 1989).[6]

■ In this case, it is clear that aircraft piracy constitutes a separate offense, distinct from the offenses for which Rezaq was indicted in Malta. The offense for which Re-

---

**4.** In exchange for defendant's guilty plea to charges 1–7, the Maltese Attorney General agreed not to pursue charges 8 and 9 of the indictment. *See* Transcript of *The Republic of Malta v. Omar Mohammed All Rezaq a.k.a. Omar Marzouki* of Nov. 1, 1988, at 1B.

**5.** 49 U.S.C.A.App. §§ 1472(n)(1), 1472(n)(1)(B) provides:

Whoever aboard an aircraft in flight outside the special aircraft jurisdiction of the United States commits [an unlawful seizure of the aircraft as defined in section (2) of this provision] and is afterward found in the United States shall be punished—
(B) if the death of another person results from the commission or attempted commission of the offense, by death or by imprisonment for life.
*Id.*

**6.** Defendant argues that *Blockburger* analysis is inappropriate in this case. Defendant's argument relies heavily on a Second Circuit opinion in which the court suggested that *Blockburger* analysis would be a "crabbed and wholly inappropriate reading" of the double jeopardy provisions of the treaty at issue in that case and, presumably, for "crimes listed in extradition treaties as well." *Sindona v. Grant*, 619 F.2d 167, 178 (2nd Cir.1980). Defendant's reliance on *Sindona* is misplaced. Although *Blockburger* is arguably "inappropriate" in extradition cases, there is nothing in the *Sindona* opinion to suggest that *Blockburger* analysis is inappropriate in cases where jurisdiction is established over a foreign defendant by means other than extradition. In this case, custody of the defendant was *not* obtained pursuant any treaty, extradition or otherwise. When custody of a person is obtained by alternative means, *Sindona* does not control.

zaq is now being prosecuted—aircraft piracy—requires that the commission of the offense be conducted "aboard an aircraft in flight." 49 U.S.C.A.App. § 1472(n)(1). None of the offenses charged by the Maltese government required, as an element of the offense, that the defendant's conduct occur on board aircraft or that such an aircraft be in flight during the alleged criminal conduct. *Compare* 49 U.S.C.A.App. 1472 *with* Maltese Criminal Code, art. 86 (Illegal arrest and detention or confinement); arts 41(a), 211(1) (Attempted willful homicide); art. 211(1)(2) (Willful homicide); art. 313 (Unlawful making or possession of explosives). Moreover, the interests that the United States seeks to protect through the aircraft piracy statute differ dramatically from the interests protected by the Maltese Criminal Code. The aircraft piracy statute protects substantial and compelling multi-national interests in punishing aircraft hijackers and preserving the safety and security of international air travel. *See United States v. Yunis*, 924 F.2d 1086, 1092 (D.C.Cir.1991); H.R.Rep. No. 885, 93rd Cong., 2d Sess. 10 (1973), 1974, U.S.Code Cong. & Admin.News 3975, 3978; S.Rep. No. 13, 93rd Cong., 1st Sess. 1, 3 (1973). Although the defendant was convicted and punished for violating the Maltese Criminal Code, the interests protected by the aircraft piracy statute were not vindicated by the Maltese prosecution. Because the statutory offense of aircraft piracy includes legal elements not contained in any of the charges listed in the Maltese indictment, and because the aircraft piracy statute protects substantial and compelling interests of the United States not vindicated by the Maltese prosecution, defendant's double jeopardy defense against the United States' prosecution fails as a matter of law.[7] Thus, defendant's motion to compel government production of documents to support this invalid defense shall be denied. *See United States v. Yunis*, 867 F.2d 617, 623–24 (D.C.Cir.1989) (holding that

a defendant is entitled to discover classified information only if it is "helpful [or beneficial] to the defense of [the] accused."). Moreover, it now appearing to this court that defendant has no legal basis to assert a double jeopardy defense is not sustainable, defendant's motion to dismiss on double jeopardy grounds shall also be denied.

### B. Motion to Reconsider the Discovery Order with Respect to Discovery Request Number 12

In discovery request number 12, the defendant sought the production of evidence material to defendant's Speedy Trial Act defense. Specifically, defendant asked the United States to produce the following:

> All papers and documents reflecting communication between the United States and the governments of Malta, Ghana, and Nigeria concerning the release of Mr. Rezaq from Malta, his subsequent transportation to and detention in Ghana, and his subsequent transportation and refusal of entry to Nigeria.

> The defendant also seeks the names and last known address and phone numbers of individuals in the United States government having first-hand knowledge of any such oral communications and the same identifying information for officials in the governments of Malta, Ghana, or Nigeria with and to whom such communications were made.

Letter for Defendant to U.S. Attorney of July 22, 1993, at 4. Defendant's Speedy Trial Act defense is premised on a showing that Ghana, Nigeria, and perhaps Malta were acting as agents of the United States such that the defendant's initial detention in Ghana triggered the running of the 30 day time limit under the Speedy Trial Act.[8] Defendant argued that under Rule 16, he was entitled to discover this information. The government's failure to respond to this re-

---

7. The United States also moves in the alternative to modify the court's Discovery Order with respect to request 9 so that only documents "material" to defendant's Double Jeopardy Clause defense are disclosed. Because this court now grants the United States motion to deny discovery of documents indicated under request 9, the motion for alternative relief is moot.

8. 18 U.S.C.A. § 3161(b) provides:
   Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.
   *Id.*

quest also prompted defendant's motion to compel.

■ Once again, the government argued in its opposition that it should not be required to comply with this request because defendant's Speedy Trial Act defense also failed as a matter of law. *See* Govt.'s Opp'n to Def.'s Mot. to Compel Disc., at 24. Once more, the court treated the prosecution's failure to contest the materiality of the requested information as an admission. *See* July 27, 1994 Mem.Op. on Disc., at 19. The court also highlighted the United States' failure to provide legal support for its "central proposition that Ghana's actions can never be attributed to the United States as a matter of law even if defendant can show collusion." *Id.* Because the court considered the issue of materiality as conceded by the government, and because the court was not persuaded by the government's argument, the court granted defendant's motion to compel the government to respond to request number 12. *See id.,* at 19.

The United States now moves the court to clarify or modify the Discovery Order with respect to request 12. The government wishes to correct an "oversight" made in its previous filings with this court and now "affirmatively states that the documents responsive to defendant's request number 12 are not 'material' to the defendant's Speedy Trial Act claim." *See* Govt.'s Mem.Supp.Mot.Recons., at 8. However, the court need not reach the issue of materiality because defendant's Speedy Trial Act defense fails as a matter of law. Defendant's detention at the hands of foreign law enforcement officials cannot be said to have triggered the running of the statutory period under the Speedy Trial Act because the Speedy Trial Act can only be triggered by a *federal* arrest made in connection with *federal* charges, and at no time was defendant subjected to *federal* arrest pursuant to *federal* charges while detained in Ghana, Nigeria, and Malta. Because these foreign law enforcement officials are legally incapable of making a *federal* arrest pursuant to *federal* charges, defendant's Speedy Trial Act defense must fail as a matter of law.

■ The running of the statutory time limit is triggered only by *federal* arrest or service of a *federal* court summons in connection with specific *federal* charges. An individual is not arrested under 3161(b) until he is taken into custody following a *federal* arrest for purposes of responding to a *federal* charge. *See U.S. v. Benitez,* 34 F.3d 1489, 1493 (9th Cir.1994); *United States v. Johnson,* 815 F.2d 309, 312 (5th Cir.1987), *cert. denied,* 484 U.S. 1068, 108 S.Ct. 1032, 98 L.Ed.2d 996 (1988). *Federal* arrest requires a "federal deprivation of liberty," and such deprivation cannot occur until the defendant is turned over to *federal* authorities. *United States v. Shahryar,* 719 F.2d 1522 (11th Cir. 1983) (per curiam); *see also United States v. Bagster,* 915 F.2d 607, 610–12 (10th Cir.1990) (holding that the running of the statutory time limit was not triggered until defendant was remanded to the custody of the United States Marshal).

■ Furthermore it is firmly established in the case law that regardless of the degree of federal involvement in the investigation and detention of individuals by other sovereigns, only a *federal* arrest will trigger the running of the Speedy Trial Act time period. *See, e.g., United States v. Mills,* 964 F.2d 1186, 1192 (D.C.Cir.1992); *United States v. Manuel,* 706 F.2d 908, 914–15 (9th Cir.1983); *United States v. Adams,* 694 F.2d 200, 202 (9th Cir.1982), *cert. denied,* 462 U.S. 1118, 103 S.Ct. 3085, 77 L.Ed.2d 1347 (1982); *United States v. Iaquinta,* 674 F.2d 260, 264–69 (4th Cir.1982); *United States v. Wilson,* 657 F.2d 755, 767 (5th Cir.1981), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 667 (1982); *United States v. Lai Ming Tanu,* 589 F.2d 82, 88 (2nd Cir.1978); *United States v. Mejias,* 552 F.2d 435, 441–42 (2nd Cir.1976), *cert. denied,* 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977). It is also undisputed that a non-federal arrest does not trigger the running of the statutory time period, even if the arrest is for conduct that is the basis of a subsequent indictment for a federal offense. *See, e.g., United States v. Mills, supra,* at 1190; *United States v. Charles,* 883 F.2d 355, 356 (5th Cir.1989), *cert. denied,* 493 U.S. 1033, 110 S.Ct. 750, 107 L.Ed.2d 767 (1990); *United States v. Janik,* 723 F.2d 537, 542 (7th Cir.1983); *United States v. Carlson,* 697

F.2d 231, 235 (8th Cir.1983). In the face of such unanimity in the case law, this court declines to give arrests by non-federal law enforcement officials the same weight and effect as federal arrests under the Speedy Trial Act.

■  Defendant alleges two separate violations of the Speedy Trial Act. First, defendant claims that his arrest by Ghanian officials triggered the Speedy Trial Act. However, as indicated above, only a *federal* arrest conducted by *federal* officials in connection with *federal* charges will trigger the running of the statutory period. Defendant was arrested and detained in Ghana exclusively by Ghanian law enforcement officials. The Ghanian officials responsible for the arrest and detention of the defendant in Ghana had been neither deputized by federal officials nor empowered by federal officials to execute federal arrests.[9] Under such circumstances, the law is clear. Only a *federal* arrest will trigger the running of the statutory period. An arrest executed by Ghanian law enforcement officials, even if the arrest is for conduct that is the basis of a subsequent indictment for a federal offense, does not constitute a *federal* arrest for Speedy Trial Act purposes. Thus, defendant's arrest and detention at the hands of Ghanian officials will not trigger the running of the statutory time limit under the Speedy Trial Act.

■  Defendant further contends that the Ghanian, Nigerian, and perhaps Maltese detaining officials were acting as agents of the United States, and that as a result of such an agency relationship, the Speedy Trial Act's time limits were activated. It is clear, however, that the Speedy Trial act may only be triggered by *federal* arrest or service of a *federal* summons. In this case, the fact that federal agents were involved in the Ghanian, Nigerian, and Maltese investigations and detentions is inconsequential. Federal involve-

ment does not magically transform an arrest conducted by a foreign sovereign into a *federal* arrest. Similarly, federal involvement or federal cooperation in foreign prosecutions and detentions does not constitute federal deputization of foreign government law enforcement officials.

In sum, only a *federal* arrest triggers the running of the 30 day time limit under § 3161(b) of the Speedy Trial Act. Defendant's arrest and detention by Ghanian, Nigerian, and Maltese officials cannot legally constitute federal arrests and/or federal detentions under the Speedy Trial Act. Defendant's Speedy Trial Act defense therefore fails as a matter of law. Furthermore, it now appearing to this court that defendant cannot properly maintain a Speedy Trial Act defense, defendant's motion to dismiss for violation of the Speedy Trial Act shall also be denied.

### C.  Motion to Reconsider the Discovery Order with Respect to *Ex Parte* Submissions

In the court's July 27 Discovery Order, the court also granted in part, and denied in part, a motion by the United States for permission to file submissions *ex parte, in camera,* and under seal. Specifically, the court authorized the United States to file statements *in camera* and under seal, but directed the United States specifically not to file submissions *ex parte.* The United States now moves this court to reconsider the court's absolute prohibition on *ex parte* submissions.

The United States does not presently seek to file its *in camera* submissions *ex parte.* However, the United States suggests that certain situations may arise during this prosecution in which the United States "may seek to file its *in camera* submissions relating to

---

**9.** According to an affidavit filed by Barbara Bodine, acting Coordinator for Counter–Terrorism in the United States State Department, federal officials asked Ghana to transfer custody of Rezaq to F.B.I. officials so that a proper federal arrest warrant could be executed. Ghana, however, expressly declined to release Rezaq into the custody of the United States, and permitted Rezaq to continue on his flight itinerary. It was

only when Nigerian officials refused to allow Rezaq to enter the country and escorted Rezaq "over and into an airplane where Special Agents from the Federal Bureau of Investigation were waiting" that federal officials gained custody of Rezaq. The F.B.I. agents eventually executed the arrest warrant upon Rezaq's arrival in the United States. Bodine Affidavit, at 4.

such situations *ex parte*." [10]   Govt.'s Mem.Supp.Mot.Recons., at 12. The government argues that in the event such circumstances do arise, the court should not prohibit the government from seeking leave to file *ex parte*. The government therefore files this motion requesting permission to file future motions for leave to file submissions *ex parte*.

Defendant does not oppose the government's request. In his response to the government's motion, the defendant explains that "it would be inappropriate to take the position that the Court should absolutely bar the government from seeking reconsideration as to a specific item." Def.'s Resp. to Govt.'s Mot.Recons., at 8. This court generally disfavors *ex parte* proceedings involving the government, and has previously expressed reservations about conducting such proceedings in this case. *Ex parte* communications between a district court and the prosecution in a criminal case are greatly discouraged, and should only be permitted in the rarest of circumstances. *See United States v. Napue*, 834 F.2d 1311, 1316 (7th Cir.1987). By way of example, in *United States v. Presser*, 828 F.2d 330 (6th Cir.1987), the Sixth Circuit maintained that "[e]x parte proceedings, particularly in criminal cases, are contrary to the most basic concepts of American justice and should not be permitted except possibly in the most extraordinary cases involving national security." *Id.*, at 335. This case presents a number of national security issues that could potentially require this court to conduct *ex parte* proceedings. Thus, the court shall grant government's motion and permit the government to file future motions for leave to file submissions *ex parte*, with the understanding that such motions must be served on the defendant and then litigated in an adversarial hearing before this court.

### D. Motion to Modify the Protective Order

The court also issued a Protective Order on July 27, 1994 to prevent the unauthorized disclosure or dissemination of classified national security information and documents made available to the defense during discovery. The Protective Order established procedures to be followed by counsel for the storage, handling, and control of sensitive information. The court stated that these procedures "may be modified from time to time by further order of the Court acting under its inherent supervisory authority to ensure a fair and expeditious trial." [11] Protective Order, at 2. The United States now asks this court to modify its Protective Order to require the return of all classified documents produced during discovery that the court determines are not "material" to defendant's defense following adversarial treatment of the issues, and to prohibit the defendant's attorneys from making any further use of the non-material classified documents produced during discovery. *See* Govt.Mem.Supp.Mot.Recons., at 13–14.

The defendant does not object to a modification of the Protective Order that would require defense counsel to return to the government any classified information that the court determines are not "material" to defendant's defense. Def.'s Resp. to Govt.'s Mot. Recons., at 9. Because the proposed modification establishes procedures that would further enhance the management and control of classified documents made available during discovery, and defendant does not object to the modification, the court shall grant the government's request that defense counsel return all classified docu-

---

10. According to the United States, these situations may include the following: (1) the use of informants; (2) the production of documents revealing other sources or methods of acquiring intelligence data; (3) the production of information that exceeds the security clearances of defendant's counsel; and (4) discussion of particularly sensitive issues with profound national security or foreign policy implications. *See* Govt.'s Mem.Supp.Mot.Recons., at 12.

11. It is well established that a district court may modify the terms a protective order it has entered, subject to the court's informed discretion. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778–80 (3rd Cir.1994); *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir.1993); *Beckman Industries, Inc. v. International Ins., Co.*, 966 F.2d 470, 473 (9th Cir.1992), *cert. denied* — U.S. ——, 113 S.Ct. 197, 121 L.Ed.2d 140 (1992). In this case, the Protective Order contained a modification provision. *See* Protective Order, at 2.

ments produced during discovery that the court determines are "not" material to defendant's defense after adversarial treatment of the issues.

However, defendant argues that modification of the Protective Order to prevent the defendant from making further use of nonmaterial classified information produced during discovery is unnecessary because the Protective Order tracks the relevant provisions of the Classified Information Procedures Act ("CIPA"), which prohibit the subsequent use of classified information without prior approval of the court after providing the government with adequate notice and an opportunity to be heard. Defendant argues that "[n]othing further is needed to protect the government's interest in nondisclosure of classified information." Def.'s Resp. to Govt.'s Mot. to Recons., at 9.

The court agrees with the defendant that the procedural safeguards set forth in sections 5 and 6 of CIPA more than adequately protect the government's interest in nondisclosure of classified materials. Section 5 of CIPA requires the defendant to notify the prosecution, before trial, of all classified information that the defense "reasonably expects to disclose or to cause the disclosure of" at trial. CIPA, 18 U.S.C.A.App. § 5(a). If defendant fails to comply with this section, the court may preclude defendant's disclosure of classified information not properly noticed, and prohibit defendant from examining witnesses with respect to that information. See id. Under section 6—the "heart" of CIPA—the government may move for a hearing to determine the "use, irrelevance, or admissibility" of classified information that the defendant expects to disclose. CIPA, 18 U.S.C.A.App. § 6(a). The government may move for a hearing once it "learns that the defendant may disclose or cause to be disclosed classified information." S.Rep. No. 823, 96th Cong., 2d Sess. 7 (1980). These hearings may be held in camera if the government certifies to the court that a public proceeding "may result in the disclosure of classified information." CIPA, 18 U.S.C.A.App. § 6(a). If, after an in camera hearing, the court determines the classified

information should not be disclosed, the hearing record is sealed. Id. at § 6(d).

The Supreme Court has long recognized that a legitimate government privilege protects national security concerns. "The government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." CIA v. Sims, 471 U.S. 159, 175, 105 S.Ct. 1881, 1891, 85 L.Ed.2d 173 (1985) (quoting Snepp v. United States, 444 U.S. 507, 509 n. 3, 100 S.Ct. 763, 765 n. 3, 62 L.Ed.2d 704 (1980); see also C & S Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 111, 68 S.Ct. 431, 436, 92 L.Ed. 568 (1948) ("[The Executive branch] has available intelligence services whose reports neither are nor ought to be published to the world."). However, this interest cannot override the defendant's right to a fair and expeditious trial. The Constitution guarantees all criminal defendants a "meaningful opportunity to present a complete defense." California v. Trombetta, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984). Moreover, the right to present a defense is a "fundamental element of due process of law." Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). In this instance, the government is attempting to both prosecute the defendant and restrict his ability to use information that he feels is necessary to defend himself against the prosecution. In contemplating the state's interest in national security, courts "must not be remiss in protecting a defendant's right to a full and meaningful presentation of his claim to innocence." U.S. v. Fernandez, 913 F.2d 148, 154 (4th Cir.1990). Sections 5 and 6 of CIPA provide more than adequate procedural protections against public disclosure of classified information. The government's proposed modifications could potentially upset this balance struck between these competing interests. The court therefore denies the government's motion to modify the Protective Order to further constrain defendant's use of classified materials.

## E. Defendant's Motion to Dismiss For Lack of Jurisdiction

Defendant argues in his motion to dismiss for lack of jurisdiction that this court lacks subject matter jurisdiction to try him for aircraft piracy because he has already been convicted in a Maltese court for other offenses arising out of the same November 1985 hijacking. According to the defendant, Congress, in enacting the aircraft piracy statute, did not intend to provide federal courts with subject matter jurisdiction over extraterritorial aircraft piracy offenses in which the defendant has already been prosecuted by a separate sovereign for crimes related to the hijacking. The defendant further contends that the Congress's grant of limited extraterritorial jurisdiction over aircraft piracy offenses also prevents the court from applying the penalty enhancement provision of the statute which provides for a minimum sentence of life if a death results from the commission of the hijacking offense. Thus, defendant urges this court to dismiss the case for want of jurisdiction.

■ A district court, in construing the language of a statute, must begin its inquiry with the language of the statute itself. *See United States v. Ron Pair Enterprises*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Where the statute's language is plain, the plain meaning of the text provides the appropriate interpretation of the statute, and the court's " 'sole function ... is to enforce it according to its terms.' " *Id.* (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)). In this case, the statute unambiguously provides that the United States may prosecute extraterritorial acts of aircraft piracy whenever the hijacker is "afterwards found in the United States." 49 U.S.C.A.App. § 1472(n)(1). Nothing in this language indicates any jurisdictional limitations over extraterritorial hijacking cases that have been previously prosecution for related crimes by another sovereign.

■ Moreover, the legislative history of the aircraft piracy statute provides a strong indication that Congress indeed intended to provide extended criminal jurisdiction over extraterritorial hijacking offenses. Congress enacted the aircraft piracy statute to "fulfill this nation's responsibilities" under the Hague Convention. *See United States v. Yunis, supra,* at 1092. The Hague Convention requires each signatory nation to "take such measures as may be necessary to establish its jurisdiction over the [hijacking] offense in the case where the alleged offender is present in [the signatory nation's] territory and it does not extradite him." Art. 4, para. 2, Hague Convention. Congress adopted the "afterward found in the United States" language to effectuate the jurisdictional provision of the Hague Convention. This statement during the Congressional hearing is illustrative of Congress's clear intent to extend criminal jurisdiction over extraterritorial hijacking offenses solely because the offender was found in the United States:

> [I]n order to satisfy article 4, paragraph 2 of the Convention, the bill includes a special provision establishing jurisdiction over the offense of hijacking when it occurs anywhere outside the special aircraft jurisdiction of the United States but the alleged offender is later found in the United States. This is the so-called universal jurisdiction provision which makes hijackers outlaws wherever they are found.

S.Rep. No. 13, 93rd Cong., 1st Sess. 1, at 3–4 (1973). The justification for universal jurisdiction over hijackers is clear. As the D.C. Circuit announced in *United States v. Yunis, supra,* at 1092, "[a]ircraft hijacking may well be one of the few crimes so clearly condemned under the law of nations that states may assert universal jurisdiction to bring offenders to justice, even when the state has no territorial connection to the hijacking and its citizens are not involved." *Id.* The legislative history of the aircraft piracy statute provides a clear indication that Congress adopted the "afterward found in the United States" language for the express purpose of extending extraterritorial jurisdiction over hijacking offenses, and at no point did Congress intend to create an exception for hijacking offenses in which the defendant had been prosecuted by another sovereign for related charges.

In this case, however, the United States has an even greater justification for asserting

extraterritorial jurisdiction over the defendant: the involvement of United States citizens. During the hijacking, the hijackers allegedly collected the passports of all passengers in order to identify American citizens on board the aircraft. The defendant allegedly executed one of the American passengers, and attempted to execute the other two. After shooting each of the Americans, he allegedly threw their bodies down onto the tarmac below. The United States therefore has a heightened interest in bringing this particular hijacker to justice, and an even stronger jurisdiction basis to do so.

■■■ Defendant also argues that the court lacks the jurisdiction to enforce the enhanced penalty provision of the aircraft piracy statute against the defendant. Section 1472(n)(1)(B) of the aircraft piracy statute provides for punishment by death or life imprisonment if "the death of another person results from the commission or attempted commission" of the hijacking. 49 U.S.C.A.App. § 1472. Defendant claims that Congress did not intend to assume jurisdiction over the death of a passenger where the defendant has already been tried, convicted, and punished for the killing.

Defendant's argument misconstrues the statutory provision. Section 1472(n)(1)(B) was not intended to confer jurisdiction. As discussed above, Congress provided federal courts with the necessary jurisdiction over the extraterritorial hijacking offense in 49 U.S.C.A.App. § 1472(n)(1) with the "afterward found in the United States" language. In contrast, section 1472(n)(1)(B) provides a penalty enhancement in cases in which the court already has jurisdiction. It is intended to fulfill the Hague Convention's broader objective: to make the offense of aircraft piracy "punishable by severe penalties." *See* Article 2, Hague Convention. Section 1472(n)(1)(B), as the text of the provision clearly indicates, is intended to increase the sanction imposed on defendants in hijacking cases where the death of a passenger results. This enhanced penalty is applicable in hijacking cases that Congress has already given courts jurisdiction to hear under § 1471(n)(1). Thus, defendant's jurisdiction-

al challenge to the penalty enhancement provision is rejected.

The aircraft piracy statute confers "universal jurisdiction" over hijacking cases to enable prosecutors to bring these offenders to justice. There is nothing in the legislative genesis of the aircraft piracy statute or in the aircraft piracy statute itself to suggest that Congress intended to restrict federal subject matter jurisdiction over extraterritorial air piracy offenses in cases, such as this one, where the alleged hijacker has already been prosecuted for other offenses arising out of the alleged hijacking. Furthermore, defendant's jurisdiction challenge to the enhanced penalty provision of the aircraft piracy statute is wholly inappropriate. The court therefore shall deny defendant's motion to dismiss for lack of jurisdiction.

### III.

### CONCLUSION

A separate order summarizing all of the above shall issue this date.

### *ORDER*

For the reasons set forth in an accompanying memorandum opinion, the court hereby ORDERS the following:

A. The Government's Motion to Reconsider the Discovery Order and Modify the Protective Order is GRANTED IN PART and DENIED IN PART, as follows:

1. The government's motion is GRANTED with respect to discovery request number 9. The Discovery Order is hereby VACATED with respect to defendant's motion to compel the government to respond to request number 9, and the same motion is hereby DENIED.

2. The government's motion is GRANTED with respect to discovery request number 12. The Discovery Order is hereby VACATED with respect to defendant's motion to compel the government to respond to request number 12, and the same motion is hereby DENIED.

3. The government's motion is GRANTED with respect to the court's discovery ruling on *ex parte* submissions. The Discov-

ery Order is hereby VACATED with respect to the court's ruling on government's motion to file *in camera* submissions *ex parte,* and the same motion is hereby GRANTED. The government may seek leave to file *ex parte,* and defendant may oppose before the court decides to accept any *ex parte* submission.

4. The government's motion to modify the Protective Order is GRANTED with respect to the return of non-material classified documents produced during discovery. The court hereby ORDERS the defendant to return all classified documents produced during discovery that the court determines are not "material" to defendant's defense after adversarial treatment of the issues.

5. The government's motion to modify the Protective Order so as to prohibit the defendant's attorneys from making any further use of classified information produced during discovery is DENIED.

B. Defendant's Motions to Dismiss are disposed of as follows:

1. Defendant's motion to dismiss on double jeopardy grounds is hereby DENIED.

2. Defendant's motion to dismiss for violation of the Speedy Trial Act is hereby DENIED.

3. Defendant's motion to dismiss for lack of jurisdiction is hereby DENIED.

SO ORDERED.